ELIZA J. WALKER, Respondent, v. JOSEPH WALKER, Appellant.

The court has power, when and while a defendant in an equity action is in contempt for disobeying its order, to refuse to hear him.

Where, therefore, the defendant in an action of divorce was in contempt because of disobedience of an order of the court directing the payment of alimony, *held*, that an order directing defendant's answer be stricken out unless he obey the previous order within five days; also an order striking out the answer upon his failure to obey, and directing a reference to take proof of the facts stated in the complaint was proper.

The authorities upon the power of the court thus to punish for contempt collated.

*Rice* v. *Ehele* (55 N. Y. 518), *Wayland* v. *Tysen* (45 id. 282), *Thompson* v. *Erie Railway* (id. 471), distinguished.

(Argued September 21, 1880; decided October 5, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming two orders of Special Term, one of which directed the payment within five days of certain sums for alimony and counsel fees, which defendant had been directed to pay by a former order, or in case of failure so to do that defendant's answer be stricken out; the other struck out the answer. (Mem. of decision below, 20 Hun, 400.)

This was an action for divorce *a mensa et thoro*.

An order was made therein directing the payment of a sum of money for alimony and counsel fees. Upon affidavit showing that for the purpose of avoiding a compliance with said order the defendant had removed from this State and became a resident of the State of Massachusetts, where he continuously remained; that he had failed to make payment of the sums directed to be paid, and that no collection of them had been accomplished by a precept issued for that purpose, an order was granted that defendant show cause why he should not be compelled to pay the same, or, in default, that his answer be stricken out and the case proceed as if no answer had been put in. The order contained a provision that the service of it on the defendant's attorney should be sufficient. The result was an order directing the payment of the sums mentioned, in five days after service of it upon the defendant's attorney, or in default thereof, that the answer be stricken out and the case proceed as if no answer had been put in. That order was not complied with, and the plaintiff, upon proof thereof, obtained an order striking out the answer and directing a reference as if no answer had been interposed.

*Samuel Hand* for appellant. The court below had no power to strike out the verified answer of the defendant, and to award an order of reference as for want of an answer in the cause. (Code, § 808; *Rice* v. *Ehele,* 55 N. Y. 518; New Code, § 538; *Strong* v. *Sproul,* 53 N. Y. 497; *Broome Co. Bank* v. *Lewis,* 18 Wend. 565; *Wayland* v. *Tyson,* 45 N. Y. 282–285; *Thompson* v. *Erie Ry. Co.,* id. 471–478; *Farmers' Nat. Bank* v. *Leland,* 50 id. 673; *Allis* v. *Leonard,* 46 id. 688; *Roby* v. *Hallock,* 55 How. Pr. 412.) The power to strike out an answer as a punishment for the non-payment of alimony and counsel fees, or even for going temporarily without the State, is without warrant in law. (3 R. S. [6th ed.], § 72, p. 158; id. 839, § 4; *Ford* v. *Ford,* 10 Abb. Pr. [N. S.] 74; 1 R. S. 63 [6th ed.]; *Wayland* v. *Tyson,* 45 N. Y. 282–285.)

*John B. Perry* for respondent. Defendant being in con-

tempt, the court had power to strike out his answer and refuse to hear him. (*Farnham* v. *Farnham*, 9 How. Pr. 231; *Barker* v. *Barker*, 15 How. Pr. 568; *Brinkley* v. *Brinkley*, 47 N. Y. 41; *Rice* v. *Ehele*, 55 id. 518; *Willis* v. *Talmage*, 10 Paige, 443; *Elingwood* v. *Stevenson*, 4 Sandf. Ch. 366; *Ford* v. *Ford*, 41 How. Pr. 169; Bishop on M. and D. 1, chap. 4, §§ 70, 78, 79, 86; id. 2, §§ 297, 323, 324; *Barry* v. *Mut. L. Ins. Co.*, 53 N. Y. 539.)

FOLGER, Ch. J. The defendant, having refused or neglected to obey an important order of the court, was in contempt, and liable to punishment by reason thereof. The punishment inflicted by the court was by an order made in the cause, to strike out the answer that had been put in by him, and to direct a reference to take proof of the matters stated in the order; the reference to proceed as if there had been no answer put in.

It is claimed that the court had no power to make that order; that every defendant has a vested right to make a defense to any action or suit or legal proceeding begun against him, and that he cannot be deprived of it.

It is conceded by the defendant that the Supreme Court, on its equity side, has all the power and authority that formerly existed in Chancery in England and was continuously exercised by it. " The rule there must be the rule here," says Chancellor KENT, " for I take this occasion to observe, that I consider myself bound by those principles which were known and established as law in the courts of equity in England at the time of the institution of this court." (*Manning* v. *Manning*, 1 Johns. Ch. 527–9.) It is not to be denied that a court of equity may refuse to a defendant in contempt, the benefit of proceedings in it, when asked by him as a favor, until he has purged himself of his contempt. (See *Brinkley* v. *Brinkley*, 47 N. Y. 40–9, and cases there cited.) But the rule has been held broader than that and enforced with much rigor. Chief Baron GILBERT lays it down in his *Forum Romanorum* (p. 33), that " if the defendant appeared before the *secundum decretum*, he

was liable to a mulct, for he could not be heard in the cause till he had cleared his contempt  *  *  *." It is suggested in *Cooper's Cases* (temp. Cott. 209), that this is merely a statement of the practice according to the canon law. But the Chief Baron says at another place (p. 71) that "the answer will not be received without clearing his contempt ;" and at another (p. 211): "So it is where a man hath a bill depending in court and falls under the displeasure of the court, and is ordered to stand committed. Here, when his cause is called, if the other side insist he hath not cleared his contempt, nor actually surrendered his body to the warden of the *Fleet*, he must do both these things before his cause can be proceeded in  *  *  *." It is stated by Lord ELDON, that it is a general rule, that a party who has not cleared his contempt cannot be heard. *Vowles* v. *Young*, 9 Ves. Jr. 173 ; *Anonymous*, 15 id. 174. The same is said, with the addition of the words "in the principal case," in 2 Com. Dig. Chancery Process, D. 8, citing Practical Register in Chancery, 217. See, also, *Heyn* v. *Heyn*, Jacobs, 49 ; *Clark* v. *Dew*, 1 Russ. & Myl. 103. The rule in the Chancery of Ireland is stated thus : A party in contempt will not be allowed to oppose the relief sought by the plaintiff by contradicting the allegations of the bill, or bringing forward any defense, or alleging new facts. *Anon.* v. *Lord Gort*, 1 Hogan, 77 ; *Valle* v. *O'Reilly*, id. 199. And the rule, as thus stated, is cited and approved in *Mussina* v. *Bartlett*, 8 Porter [17 Ala.], 277. See, also, *Rutherford* v. *Metcalf*, 3 Hayw. [Tenn.] 58, 61. And in *Saylor* v. *Mockbie*, 1 Withrow [9 Iowa], 209, 212, it is held : That until the defendant had purged himself of contempt, the court might well refuse to receive his answer to the complainant's bill, or to consider the matter set up in it by way of excuse for refusal to obey the order. The Reporter (Coop. temp. Cott, at page 211), cites in a note the case of ——— v. *Lord Gort* (*supra*), and says of it : "The accuracy of some of these *dicta* may be doubted." He does not state as to which of them he queries. Many cases are collected in the note just above mentioned ; some of them show that the rule has not been rigorously applied in later times (see *King* v. *Bryant*, 3 Myl. & Cr. 191

especially), but it does not appear that it has been abolished or abandoned entirely. It seems too that the authors of the Revised Statutes thought that this power resided in the English Court of Chancery. In preparing the sections relative to the production and discovery of books and papers (2 R. S. 199, §§ 21 *et seq.*) they provided (§ 26), that in case of a party neglecting or refusing to obey an order, the court might strike out his plea and debar him from a defense; and they sought thus to assimilate the practice to that of the Court of Chancery. See reviser's note, 5 Edm. Stat. 411. The legislature gave its sanction to the proposed practice by passing into law the sections reported by the reviser. It is well to say here that *Rice* v. *Ehle* (55 N. Y. 518) does not condemn this. That case holds that the pleading may not be stricken out, save on notice to the party (p. 523); and that the exercise of this power was legitimate was recognized by MARCY, J., in *Birdsall* v. *Pixley*, 4 Wend. 196. The power seems to have been exerted or recognized by the Supreme Court in several instances, without question made by appeal. *Farnham* v. *Farnham*, 9 How. Pr. 231; *Barker* v. *Barker*, 15 id. 568; *Ford* v. *Ford*, 41 id. 169.

We are brought to the conclusion that there has long been exerted by the Court of Chancery in England the power to refuse to hear the defendant when he was in contempt of the court by disobeying its orders, and that that power was in the Courts of Chancery of this country.

We do not think that the cases of *Wayland* v. *Tysen* (45 Y. 282), and *Thompson* v. *Erie Railway* (id. 471) and others of like result, are in the way of this conclusion. They were not cases of contempt, nor were they equity cases. Besides, there the answer was stricken out, with no loophole left for relief to the defendant. It is always in the power of the defendant, in a case like this in hand, to apply to the court and show that the order was irregularly made, or for leave to purge himself of the contempt and be let in again to make his defense; *Brinkley* v. *Brinkley*, *supra.*

The order should be affirmed.

All concur.

Order affirmed.