ELIZABETH QUIGLEY. Appellant, *v.* LOUIS J. QUIGLEY, Respondent.

*Action for divorce — an answer may be stricken out for a failure to pay alimony — no favor will be granted to a party in contempt — when an application to open a judgment of divorce entered against the defendant should not be granted on the petition of the person with whom the adultery is found to have been committed.*

The defendant in this action, brought by his wife for a divorce on account of his adultery, having failed to comply with the terms of an order requiring him to

pay $100 as alimony, an order was, on January 18, 1886, entered striking out his answer and appointing a referee to take proof of the facts alleged in the complaint and report the same to the court. The referee having reported that the defendant had committed adultery with one Anna G. Steele, a judgment dissolving the marriage and requiring the defendant to pay certain sums as alimony and for the support of a minor son, together with costs, was, on February 16, 1886, duly entered. Subsequently the plaintiff, by proceedings instituted in the County Court and at an expense of fifty dollars, procured her name to be changed. Thereafter, and on August 19, 1886, an order was made setting aside the judgment, the order striking out the answer, and all orders granted in the action subsequent to the service of the defendant's answer. Among the papers used on the motion was a petition and affidavit of the said Anna G. Steele, with whom the referee had found that the defendant had committed adultery.

*Held,* that as it appeared that the defendant was in contempt and that the motion was granted solely as a favor and upon terms, the order, in so far as it concerned the defendant, was unwarranted and should be reversed.

That, in so far as the order was made in the interest and in behalf of the said Anna G. Steele, it was unauthorized for the following reasons:

*First.* That the motion was not made by her or in her behalf, but was made by the defendant, it not appearing but that her petition was used simply as one of the defendant's moving papers to strengthen his own case.

*Second.* That if it were assumed that the application was made in her interest alone, and that the only effect of the order would be to afford her relief, there was no practice in the State which authorized the court to make it.

*Clay* v. *Clay* (21 Hun, 610) distinguished.

*Third.* That if it were assumed that the court had power to make the order in her interest, the motion should have been denied by reason of her laches.

*Fourth.* That it should also be denied for the reason that it was stated in an affidavit of the plaintiff, which was read on the motion, that the said Anna G. Steele had admitted that she had been intimate with the defendant, and that this statement was not denied by the said Anna G. Steele, nor was any application made in her behalf for leave to do so.

*Fifth.* That the terms imposed were inadequate as not including the costs of the plaintiff's proceedings in the County Court to change her name.

APPEAL from an order of the Erie Special Term setting aside the judgment of divorce granted herein by default, and other proceedings taken by and in behalf of the plaintiff, on terms.

*William C. Watson,* for the appellant.

*George Bowen,* for the respondent.

SMITH, P. J.:

This is an action for divorce on the ground of adultery. It was commenced 24th February, 1885, by service of summons on

defendant personally. The complaint which was verified on 17th April, 1885, charged that the defendant, who was a music teacher in the State institution for the blind, at Batavia, committed adultery with Anne G. Steele, a pupil and inmate of the institution, on numerous occasions during the period of three years, next preceding the 1st of April, 1885. The defendant answered, denying the charges contained in the complaint. On 2d June, 1885, an order was made requiring the defendant to pay $100, alimony, within thirty days from the date of the order. The defendant did not comply with the order, but left the State, and on 18th January, 1886, upon plaintiff's motion an order was entered striking out the defendant's appearance and answer by reason of his non-compliance with the order, and appointing a referee to take proof of the facts alleged in the complaint, and to report the same to the court with his opinion. The referee took proofs and reported, among other things, that on the 18th of June, 1884, and at divers other times in that year, the defendant committed adultery with the said Anna G. Steele, in the said institution, and on 16th February, 1886, the report was confirmed by the court, and judgment was entered dissolving the marriage of the parties, requiring the defendant to pay $200 a year for the support of the plaintiff and $100 a year for the support of their minor son, and also to pay the plaintiff's costs of the action, which were fixed at the sum of $201.44. Subsequently the plaintiff procured the name of herself and of her son, to be changed from Quigley to Englehart, which was her name before marriage, by proceedings in the County Court, at an expense of fifty dollars. Thereafter, and on 19th August, 1886, the order now appealed from was made, setting aside the judgment, the order of 18th January, 1886, and all proceedings taken on the part of the plaintiff, and all orders granted in the action, subsequently to the service of the defendant's answer. Among the papers upon which the order was made were a petition and an affidavit of the said Anna G. Steele which will be referred to more particularly, further on.

In determining whether the order should be affirmed, it will be useful to consider it first, as it relates to the defendant. That the defendant was guilty of a contempt in leaving the State and neglecting to obey the order requiring him to pay alimony can not be questioned. Nor is there any doubt that by reason of his contempt,

the court had authority to strike out his answer, and direct a reference, and allow the action to proceed in the same manner as if the defendant had not answered or appeared. And the order made to that effect was in accordance with the well-settled practice of the court. (*Farnham* v. *Farnham*, 9 How. Pr., 231; *Walker* v. *Walker*, 20 Hun, 400; *S. C.*, affirmed, 82 N. Y., 260, and authorities there cited by Folger, Ch. J.) The defendant has not purged his contempt, and it is well settled that a party who is in contempt cannot successfully apply to the court for a favor connected with a matter out of which the contempt arose (*Barker* v. *Barker*, 15 How. Pr., 568; *Brinkley* v. *Brinkley*, 47 N. Y., 40), although he may be heard on matters of strict right. (Id.) It appears from the notice that the defendant's motion was based in part upon certain alleged irregularities, and partly was addressed to the favor of the court. It was granted solely as a favor and upon terms. But as has been seen, the defendant, being in contempt, was entitled to no favor until he had purged the contempt, and that he has not done. So far as he is concerned, therefore, the order is unwarranted, and it is evident from the opinion of the Special Term judge contained in the appeal papers that he granted the orders solely in view of what appeared to him to be to the interest of Anna Steele.

How stands the case with respect to her? She is not a party to the suit. The motion was not made by her or in her behalf. The order is record evidence of that fact, as it recites that the motion was made on behalf of the defendant. For aught that appears, her petition was used simply as one of the defendant's moving papers to strengthen his case. It contained a formal prayer that an order be entered allowing her to be present at the trial, with counsel, to cross-examine the witnesses, to testify as a witness in the cause, and to examine such other witnesses as she may be advised shall be proper, but apparently she made no application to the court and no part of that relief was granted by the order. So that while the order sets aside the judgment and permits the defendant to come in and defend, it provides no mode by which Anna Steele, who, for convenience, will be referred to as the petitioner, can rightfully intervene in the action or upon the trial, and she will be dependent, for even notice of the trial, upon the favor of one party or the other. That circumstance is not very prejudicial to her interests, perhaps,

as she can probably rely on getting notice from one of the parties, but it shows that she is content with an order which, refusing the relief suggested in her petition as needful to herself, grants all that the defendant can desire.

But let us suppose that the application was made in the interest of the petitioner alone, and that the only effect of the order will be to afford her relief, which, as we have seen, is the only view in which it can be sustained. The sole ground upon which she can ask to be permitted to intervene is that she is incidentally affected by the judgment. That she is so affected by it is true. So every child who, in effect, is pronounced illegitimate by a decree of divorce is in a like unfortunate position, but there is no practice in this State permitting a child so situated to intervene in the action. The English practice of allowing the party with whom the adultery is alleged to have been committed to come in as a co-respondent does not obtain here. There is a single reported case in this State in which relief similar to that suggested in the petition of Anna Steele was granted in a divorce case. (*Clay* v *Clay*, 21 Hun, 610.) But there the application was made before judgment and also before any proofs were taken, and it is apparent that the court thought in that case that they were going to the very verge of their discretionary authority. The defendant in that case had made default, and thereupon the petitioner asked leave to come in and answer and defend on the merits, but that was held to be beyond the power of the court to grant. Here, however, the defendant having lost the right to answer, not by a mere default, but by a flagrant contempt of the order of the court, the petitioner obtains indirectly, through an answer and defense interposed in the defendant's name, what the court has not power to grant to her directly. Subsequently to the decision in *Clay* v. *Clay*, Mr. Justice DONOHUE expressed the opinion at chambers, that by reason of the danger of collusion in thus permitting what is substantially a full litigation without personal responsibility, that case should not be treated as a general precedent. The case now before us shows the wisdom of that remark. Without imputing collusion, in an offensive sense, it is obvious that in the motion which- resulted in the order under review, the petitioner and the defendant acted in concert, the petitioner having furnished the defendant with her

petition and affidavit, and the notice of motion being signed by one attorney in the name of each. And by this concerted action, relief has been obtained, to which neither party would have been entitled, moving alone. Had the motion for leave to answer been made by the defendant in his own interest solely, it would have been denied because he was in contempt; had it been made by the petitioner alone, it must have been denied on the authority of the Clay case, for want of power.

But let it be assumed, for argument, that the court has power to make the order in the interest of the petitioner, nevertheless, we think the motion should have been denied by reason of her laches. That she was informed of the action, of the time when it was commenced, of the time when the complaint was served, and of the charges contained in it respecting herself, appears by her petition, but she does not state when she obtained the information, nor why the statement is omitted, and as she is to be presumed to have presented her case as strongly as the truth would permit, the inference follows that a statement of the time when she learned those facts would not have tended to her advantage. That she knew, or was informed, of the fact that the defendant had answered denying the charges in the complaint, appears from her statement that she had no notice that the answer had been stricken out, and that she expected that the cause would be tried upon the defendant's denial, "and that an opportunity would be afforded her through the defendant to establish her innocence of the charges made against her."

Upon what was such expectation based? She is no exception to the maxim that every person is presumed to know the law. For aught that appears, she was of full age and of good understanding. She had made no application to the court for leave to intervene in the action or at the trial, or for relief of any kind. The order of reference was not executed until nearly a year after the suit was begun. The judgment was entered in February, 1886, and she does not deny that she knew the fact at the time, yet her petition was not made until about five months thereafter. This delay is in nowise excused or explained. Such delay, unexplained and unexcused, would defeat a like application by a party to the suit, and the obstacle it presents is equally formidable in the case of a third person appealing to the sound discretion of the court.

The papers used on the motion present another fact which we think is fatal to the application, considered as that of the petitioner. The judgment-roll was used on the motion, and the proofs contained in it taken by the referee, made at least a *prima facie* case in respect to the charges connected with the petitioner. It is true the petitioner in her affidavit denied the truth of those charges. But in opposition to the motion an affidavit of the plaintiff was read in which she stated that in a conversation which she had with the petitioner, before the suit was commenced, the latter admitted that she had received numerous love letters from the defendant which she had burned, and the affidavit further averred that when charged by the plaintiff with " having been intimate" with the defendant, she admitted that she had been, and she asked plaintiff to forgive her. More was stated to have been said by the petitioner in that con- conversation, and the whole of the conversation, as detailed in the affidavit justified the inference that the purport of the admission was that there had been criminal intercourse between the petitioner and the defendant. The statement that such admission was made stands uncontradicted. If true, it should defeat the application. True, it was contained in an opposing affidavit, to which no reply could be made on the hearing of the motion. But leave might have been asked to prepare replying affidavits, the motion to stand over for the purpose; or, if no postponement could be had, then that the motion be denied, with leave to renew. Nothing of the kind was asked for, and the motion was submitted and decided, and the appeal is to be disposed of, with the uncontradicted statement of the fact of such admission in the case. The affidavit of the plaintiff also alleged an admission to her by the defendant of criminal intercourse between him and the petitioner. That aver- ment, also, is not controverted.

The only terms imposed by the order are the payment of the amount of alimony fixed by the order, for non-compliance with which the defendant was in contempt, and payment of the costs of opposing the motion. No mention is made of the costs of the plaintiff in the proceedings taken by her subsequently to the making of that order, including the proceedings in the County Court for a change of name, which she conducted, relying on the validity of the judgment of divorce. In that respect the terms imposed seem

inadequate. Perhaps this feature of the order, although apparently unjust to the plaintiff, is not enough, of itself, to warrant a reversal, but it is a circumstance to be considered in disposing of the appeal.

For the reasons stated, we are not prepared to sanction the practice for which an affirmance of the order, in the circumstances of this case, would furnish a precedent. Actions for divorce involve public interests as well as private rights. While the courts should take care that divorces are not granted on insufficient evidence, they should also see that when granted they are not set aside, even upon the application of a party, unless the application is made upon substantial and just grounds and with reasonable diligence. An equal degree of circumspection, to say the least, is required when the application is made by one not a party and who could not have been made a party to the action.

The order should be reversed and the motion denied, with ten dollars costs and disbursements, to be paid by the defendant.

HAIGHT and BRADLEY, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, to be paid by the defendant, and motion denied.