HARRY M. BENNETT, *a minor by* CHAS. B. WILSON, *Guardian ad litem* v. SARAH GRACE BENNETT.

(Filed June 7, 1905)

1. DIVORCE—Alimony—Contempt of Court.  In this Territory, in an action for divorce, the district court has power to punish a contempt of court in refusing to pay alimony awarded by it, by striking the defendant's answer from the record or refusing to permit him to plead further in a case in which the defendant has voluntarily absented himself from the Territory for the purpose of avoiding contempt proceedings, for failure to pay such alimony and punishment for contempt cannot be otherwise inflicted.

2. SAME—Fraudulent Conveyances—Parties.  In an action for divorce on the ground of cruelty, and where it is alleged in the petition that property has been fraudulently conveyed to a third person

for the purpose of defeating the collection of alimony that may be awarded, and where the defendant in the divorce proceedings and the party to whom the conveyance was made by said defendant are both served with summons, the grantee in such fraudulent conveyance is not a proper party to the divorce proceedings, and it is not an error to refuse to permit such defendant to be heard on the question of a divorce, where the defendant in the divorce proceedings is in default; but the defense of such grantee only extends to the question of alimony, and the validity of such conveyance.

3. SAME—Burden of Proof. Where a husband, with notice that a divorce proceeding is about to be commenced against him, or with notice of such facts as would reasonably apprise him of this fact, conveys his property to an infant son, the offspring of a marriage with a former wife, and the purpose is apparent that such conveyance is made to defeat a decree for alimony: · Held, that the burden of proof was upon the grantee to show a valuable consideration, or that such conveyance would not tend to defeat any alimony that might be granted in such divorce proceedings, and the burden of proof in such case is not upon the plaintiff in the divorce proceedings to show insolvency of the grantor.

(Syllabus by the Court.)

*Error from the District Court of Lincoln County; before Jno H. Burford, Trial Judge.*

*Chas. B. Wilson, Jr.,* and *Emory A. Foster,* for plaintiff in error.

*S. D. Decker, Fred A. Wagoner,* and *Hoffman & Embry,* for defendant in error.

### STATEMENT OF FACTS

This was an action begun by the defendant in error, Sarah Grace Bennett, on the 21st day of May, 1903, in the district court of Lincoln county, Oklahoma Territory, for divorce and alimony, against A. W. Bennett. On the 21st day of July, 1903, Sarah Grace Bennett filed an amended petition in said cause, in which she made Harry M. Bennett, a son of A. W. Bennett by a former marriage, a minor 11 years of age, a party defendant. In the amended petition it is al-

leged that defendant A. W. Bennett was guilty of extreme cruelty towards the complainant. It is further alleged that on the 20th day of May, 1903, the said A. W. Bennett conveyed by warranty deed certain real estate in Chandler, and other real estate in Lincoln county, to the said Harry M. Bennett for the purpose of defrauding the complainant out of any rights which she might have in said real estate by reason of the marriage relations, and to defeat any claims for alimony. A copy of the deed to Harry M. Bennett by A. W. Bennett was attached to the amended petition, and marked Exhibit "A", and by the prayer of said petition, the complainant asks for a divorce from the said A. W. Bennett; that the homestead, consisting of lots 19 and 20, in block 28, in Bennett's addition to the city of Chandler, Lincoln county, Oklahoma Territory, be decreed to her for permanent alimony, and for such other alimony as the court might give; that the deed from A. W. Bennett to his son Harry M. Bennett, be declared void as to the complainant in that case, and that her judgment for alimony be declared a lien on said premises. After the filing of the original petition on the 21st day of May, 1903, summons was issued, and on the 21st day of May, 1903 the sheriff of Lincoln county made his return on said summons, showing that he served the said A. W. Bennett by leaving a copy of said summons at the last usual place of residence of said A. W. Bennett in Lincoln county, Oklahoma Territory. On the said 21st day of May, 1903, Victor S. Decker attempted to serve on the said A. W. Bennett a notice that the defendant in error would, on the 23rd day of May, 1903, present an application to the Hon. Jno. H. Burford, judge of the district court, at Chandler, at Stillwater, Payne county, Oklahoma Territory, for an order allowing

temporary alimony, and attorney's fees for the use of the defendant in error pending divorce proceedings, and that said A. W. Bennett refused to receive said notice. That on the 23rd day of May, 1903, said order was presented to said Jno. H. Burford, judge, at Stillwater, Oklahoma Territory, in chambers, and that on said 23rd day of May, 1903, the judge of the district court of Lincoln county, at chambers in Stillwater, Oklahoma Territory, ordered the said A. W. Bennett to pay into the office of the clerk of the district court of Lincoln county, Oklahoma, $1000.00, for temporary alimony for defendant in error, and $100.00 for her attorney's fees, which said order to pay alimony was served on the said A. W. Bennett by the sheriff of Lincoln county, Oklahoma Territory, on the 18th day of February, 1904.

On the 12th day of June, 1903, the said A. W. Bennett appeared specially by his attorneys, to question the jurisdiction of the court, and to move to set aside the return of the sheriff of the summons in the case. During the pendency of said motion, at the September, 1903, term of the district court in Lincoln county, the sheriff of said Lincoln county, Oklahoma Territory, amended his return on said summons by drawing a line through the word "last." On the 21st day of July, 1903, the defendant in error filed her amended petition in said cause, and at that time she filed her petition and affidavit for the notice by publication for said A. W. Bennett, and the plaintiff in error, Harry M. Bennett, a minor, by A. W. Bennett his guardian and father, as non residents of the Territory of Oklahoma. On the 19th day of September, 1903, the court appointed Chas. B. Wilson, guardian *ad litem* for said Harry M. Bennett, a minor, and on the 30th day of September, 1903, said guardian *ad litem* filed his an-

swer to the amended petition, for said minor. On the 17th day of February, 1904, summons was issued on the amended petition, and was served on the said A. W. Bennett in Lincoln county, Oklahoma Territory by the sheriff of said county and on the 12th day of March, 1904, the answer day, the attorneys for said A. W. Bennett appeared specially and moved the court to set aside the service of summons in said cause, which motion was overruled by the court on the 6th day of April, 1904. Thereupon the said A. W. Bennett offered, then and there, to file his answer to the amended petition of defendant in error, which said offer of said A. W. Bennett to file answer in said cause was by the court refused, for the reason that the said defendant was at that time in contempt of the court by reason of his failure and refusal to comply with the order of the court heretofore made, to pay the plaintiff in this case the sum of $1000.00, as temporary alimony, and $100.00 for attorneys fees in the case; but the court made the further order that the defendant should be permitted to file said answer within five days, on condition that he purge himself of contempt by complying with said order within that time, to which order of the court the defendant, A. W. Bennett, excepted at the time. On the 11th day of April, Geo. A. Spink, of the firm of Spink & Spink, attorneys for the defendant, in open court made a motion that the time allowed A. W. Bennett to comply with the order of the court in regard to alimony *pendente lite,* and attorney's fees, and also to plead, be extended to the 13th day of April, 1904, which motion was granted by the court, and said time extended to and including the 13th day of April, 1904, which order appears at page 87 of the case made. On the 29th day of April, the same being one of the judicial days of the April

term, 1904, of the district court in and for Lincoln county, the issues having been joined, this cause came on for trial. The plaintiff appeared in person and by her attorneys, and the defendant, Harry M. Bennett, a minor, appeared by his guardian *ad litem,* Chas B. Wilson; the guardian *ad litem* for the said minor defendant being at the time informed by the court that he would be permitted to cross examine the witnesses, object to the testimony, and to have a hearing on the question of alimony, but that on the question of divorce he would not be permitted to be heard.   After hearing evidence and being advised in the premises, the court finds that the defendant, A. W. Bennett, was duly and legally served personally with summons in said action, as shown by the return of the sheriff of Lincoln county; and the court further finds that the defendant, A. W. Bennett has failed and refused to comply with an order made by the court on the 23rd day of May 1903, wherein the defendant was ordered and adjudged to pay the plaintiff within ten days from date, one thousand dollars  as and for  temporary alimony  and suit money, and the sum of one hundred dollars as and for an attorney's fee.   The court further finds that the said order was served on the defendant, A. W. Bennett by the sheriff of Lincoln county, Oklahoma Territory.

The court further finds that the defendant, Harry M. Bennett, a minor, on and after the filing of plaintiff's amended petition herein, has been duly and legally served by publication by the plaintiff, and that said action is one of the cases in which service by publication is authorized by law. The court further finds that a guardian *ad litem* has been duly and legally appointed for said minor defendant.   And the court further finds that the defendant, A. W. Bennett,

has failed to comply with the former order of the court as to alimony and attorney's fees, or make excuse for not complying, and having failed to answer the petition of plaintiff herein, the said defendant, A. W. Bennett is now called three times in open court, but makes default, and fails to plead or otherwise appear in said cause, and the said A. W. Bennett is by court adjudged to be in default, and not entitled to answer or plead until he shall comply with the order heretofore made with reference to alimony and attorney's fees. The plaintiff having introduced her evidence and rested her case, the defendant, Harry M. Bennett, minor, by Chas. B. Wilson, guardian *ad litem,* and Chas. B. Wilson, Jr., his attorney, introduced no evidence and submitted the case to the court. The court finds for the plaintiff, and that she is entitled to have and recover of and from the defendant, A. W. Bennett, the sum of six thousand dollars, and lots 19 and 20, on block 28, the same being the homestead of the plaintiff and defendant as permanent alimony, and that she further recover the sum of five hundred dollars as and for the payment of attorney's fees, and the costs of this suit.

The court further finds that the deed from A. W. Bennett to Harry M. Bennett, is without consideration, fraudulent and void, as affecting the rights of plaintiff, and that the same should be set aside and held for naught, and the property therein mentioned held subject to the payment of the six thousand dollars alimony, and five hundred dollars attorney's fee, and the costs of this suit. To all of which the defendant excepts, and in due time files his motion for new trial, which motion is overruled, and excepted to, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error complained of by the plaintiff in error, is that the court erred in refusing to grant A. W. Bennett permission to file his answer to the amended petition of defendant in error. This raises the question as to whether in this Territory, the court has power to strike the pleadings of a party from the record, or to refuse a party the right to file pleadings, when such party is in contempt of court for refusal to pay alimony when ordered so to do by the court.

It seems to us that the facts in this case bear a very close analogy to the facts in the case of *Zimmerman v. Zimmerman,* in the supreme court of Montana, reported in 14th Pac. 665. That was an action for divorce and alimony, and after the filing of the petition, an order was made for alimony *pendente lite.* This order further provided that if this alimony was not paid, the appellants answer should be stricken from the files, and himself proceeded against in the manner provided by law for the enforcement of the order. On the 4th of October, 1886, a motion to strike the answer of appellant from the files was made for the reason that he had not complied with the order of the court requiring payment of alimony. It appears that the above order of court was served on the appellant on the 26th day of May, 1886, in Elks county, Nevada. On the 5th of October, 1886, a motion was made to vacate and set aside the order allowing alimony pending the action. On the 9th of October, following, the court overruled the motion striking the answer of the appellant from the files, and modified the former order allowing alimony *pendente lite.* The court upon affidavit that the modified order had been disobeyed, ordered the answer of ap-

pellant stricken from the files. Thereafter the court ordered the cause to be ·referred, as in a case of default, and upon the report of the referee ordered a decree of divorce and permanent alimony. From this decree an appeal was taken, and the only thing complained of is the action of the court in striking the appellant's answer from the files. Upon this question, the Montana supreme court says:          ,

"The first question for our consideration is: Did the district court have the power to make this order striking the appellant's answer from the files for disobedience to its mandates? If so, was the order properly made, under the peculiar circumstances of this case?. It is admitted that this order was made as a punishment for contempt in disobeying the order of the court in relation to the payment of alimony. It is claimed by the appellant that as our statutes have provided for the punishment of contempt, this is a limitation upon the power formerly exercised in such cases, upon the principle. we presume, of the maxim, *expressio unius, exclusio alterius;* and we are referred to the case of *Galland v. Galland*, 44 Cal. 475, as sustaining this doctrine. Upon an examination of this case, we find that the portion of the opinion relied upon to uphold this view, is *obiter dictum.* The court, after referring to the punishment provided by the statutes of California for contempt, uses this language: 'This is a limitation upon the power formerly exercised by the courts for contempt, but whether courts in this state can excercise power in this respect in cases not named in the statute or otherwise than it has provided, we are not called upon in this case to consider.'

"Upon the other hand, it is contended that the court is not limited to the punishment for contempt provided by the statute, in case of disobedience to its orders; and that it has control of its own proceedings and can refuse the benefit of them to a party in contempt. In the case of *Walker v. Walker*, 59 How. Pr. 476, which was an action in divorce, ·

the answer of the defendant was stricken out, upon his default being shown to comply with an order *nisi* of the court that he pay alimony within five days. This order was appealed to the general term, where it was affirmed, and from thence taken to the court of appeals. In this case it was 'considered by the defendant' and impliedly held by the court, 'that the supreme court, on its equity side, has all the power and authority that formerly existed in chancery in England, and was continuously exercised by it.' The same concessions must be made in the case at bar.

"Our organic act provides that 'the supreme court and the district courts, respectively, of every territory shall possess chancery as well as common law jurisdictions. 'Each of the district courts in the territories, mentioned in the preceding section, shall have and exercise the same jurisdiction, in all cases arising under the constitution and laws of the United States, as is vested in the circuit and district courts of the United States.' (Sections 1686, 1910, Rev. St. U. S.) By virtue of the foregoing act of congress, the district courts of this territory who are vested with all the chancery powers which formerly belonged to chancery in England. In the case last referred to, Folger, J., in rendering the opinion, after referring to numerous authorities, both American and English, says: 'We are brought to the conclusion that there has long been exerted, by the court of chancery in England, the power to refuse to hear the defendant when he was in contempt of the court by disobeying its order, and that that power was in the courts of chancery in this country. It is always in the power of the defendant, in a case like that in hand, to apply to the court, and show that the order was irregularly made, or for leave to purge himself of the contempt, and be let in again to make his defense;' referring to *Brinkley v. Brinkley*, 47 N. Y. 40. In this latter case which was one for limited divorce, the same judge says: 'The special term having made the order, and the defendant having, on service thereof, neglected to comply with it, he has been

disobedient of the court, and in contempt of it. The court has power to punish him therefor. This might be fine, or imprisonment, or both. But it was not limited to this mode of enforcing its orders. Inasmuch as, after the commencement of the action, he has gone out of the jurisdiction, it would not have availed to have ordered him fined and committed. But it had control over its own proceedings, and could refuse to the defendant the benefit of them when asked as a favor, until he purged himself of the contempt.'

"In *Peel v. Peel*, 50 Iowa, 522, the court below had str'cken the answer of the defendant from the files for the reason that he had failed to pay the money specified in the order for alimony, and refused afterwards to allow the defendant to show cause why he had not obeyed the order, and thus purge himself of contempt. For this refusal, the decree of the court was reversed. But in this case, the court, by Beck, C. J., uses this language: 'While we are not prepared to hold that a defendant in a divorce case, failing or refusing to obey an order for payment of alimony, may in no case be lawfully visited with punishment, by striking his answer, the authority should be exerted only in extreme cases, when other punishment cannot be inflicted, or will not enforce obedience.'

"In the case at bar, by reason of the absence of the appellant, other punishment could not be inflicted than that to which the court resorted, or obedience be compelled thereby. It will be observed that in Iowa the statute provides that the punishment for contempt may be by fine or imprisonment. See, also, *McClung v. McClung,* 40 Mich. 493; *McCrea v. McCrea,* 58 How. Pr. 220. In this territory the action of divorce is made by express statute, a chancery proceeding. (Sec. 508, div. 5, Rev. St. 1879.)

"We are of the opinion, therefore, that in such a case as the one at bar, the defendant being out of its jurisdiction. the court has power to refuse to hear a defendant who is in

contempt of its authority, as in the case of *Walker v. Walker,* *supra,* to strike his answer from the files."

Now an examination of the record, it seems to us will show the fact beyond question, that at the time this case was reached for final hearing, that the defendant had been granted two extensions of time for the purpose of giving him an opportunity to comply with the order of court, one of five days, and the other of two days and at the time the case was called for trial he had not then, so far as the record shows, made any attempt to comply with the order of the court. The allegations of the petition which are undisputed, show that he had abundant means wherewith to comply with the order, had he wished so to do. An examination of the record shows at page 64, in the affidavit of the defendant A. W. Bennett he distinctly states that he has abandoned his residence in Oklahoma Territory, and is at that time a resident of the Indian Territory, and in the record at page 79, in a copy of letter written by the defendant A. W. Bennett, to the plaintiff Grace Bennett, he used language that leaves no doubt that his residence in the Indian Territory, and his absence from Oklahoma Territory was for the express purpose of defeating the payment of this alimony, as he says in that letter "My lawyers tell me that if I come back it will be in contempt of court and I will be put in jail, which I should be sorry to do." Now it seems to us that these facts as shown by the record, bring the case squarely within the statement of facts contained in the Montana case. In fact, it is a case on all fours with it, and the same rules would govern the courts of this territory that governed the courts of the Territory of Montana at the time this opinion was rendered.

And we are not left for authority to the decisions of other courts, but we have in the case of *Maharry and Ray, v. Maharry,* reported in 5 Okla. 371, the authority of our own court on this same proposition.. The syllabus of that case is as follows:

"*DIVORCE—Temporary alimony—Pleadings.* The answer of the defendant may be stricken from the files, and he be held in default, where it is shown that the defendant had ample means to comply with an order for the payment of temporary alimony and refused to pay it."

In that case, at the time the plaintiff commenced her action for divorce and alimony against the defendant William J. Maharry, she procured a restraining order enjoining the defendant from a disposition of his property; and also an order for $50.00 attorney's fees, and for suit money in the sum of $50.00, and for $20.00 a month for her support. The order for temporary alimony was subsequently modified so as to require the payment of $25.00 attorney's fees, and $25.00 alimony pending the litigation. In this case at page 376 of the opnion, this court, speaking through Justice Bier-er says:

"Plaintiff in error, Maharry,. contends that the court erred in sustaining the motion of the plaintiff to strike his answer and cross-petition from the files. The contention is that the record shows an absolute inability to comply with the order to pay alimony and cases are cited by the plaintiff in error to support his claim that it is erroneous to strike a party' pleadings from the files where his failure to pay alimony has resulted from inability and poverty. On the consideration of this motion, the court heard evidence consisting of the testimony of Teague Ray, attorney for the defendant. * * * The testimony of the defendant's own attorney also showed that he had absconded, left the territory and the

jurisdiction of the court, and was, when last heard from, in another state evading any further proceeding that the plaintiff might take to enforce the order of the court excepting the remedy proposed. The plaintiff had, under such circumstances, the right to have the defendant's answer and cross-petition stricken out."

And in support of this, the court cites Bishop on Marriage, Divorce and Separation, vol. 2 sec. 1095; *Walker v. Walker*, 82 N. Y. 260.

And it seems to us there is another very good and cogent reason why this error, if error it is, cannot be available in this court. This refusal of leave to file an answer by the defendant, A. W. Bennett, was a denial of the right of A. W. Bennett to appear and resist the divorce proceedings, and was a matter purely personal to himself, and one which in our judgment the plaintiff in error, Harry M. Bennett, was not a proper party to and had no interest in. It is true that counsel for plaintiff in error have cited a great many authorities in support of the right of A. W. Bennett to be heard in the divorce case, notwithstanding his default in obeying the order of the court, and his contemptuous treatment of the court. In support of that, they cite article 5, amendments to the Constitution of the U. S.; Rev. Stat. U. S. sec. 725, and a number of other decisions, and these decisions, and the amendment to the Constitution are ably discussed in the brief of plaintiff in error, but notwithstanding the high grade of the authorities, and the profound learning displayed and the wisdom exhibited in the argument for the same, we feel that its force and virtue it to a large measure detracted from, by the fact that their client, whom they so ably defend in this particular, is not a party to this record, and has taken

no appeal. So far as the propositions of this case are con-cerned, we have the right to presume that A. W. Bennett is entirely satisfied with the result, as he has taken no steps to protect his legal rights by an appeal in the manner provided by law. Then the only remaining question in this case as to this proposition, is as to whether Harry M. Bennett, the other defendant in the case, can in any way avail himself of this error on an appeal taken by him. The petition filed by the plaintiff in the court below was two fold in its char-acter. It charged against A. W. Bennett certain causes for divorce. It charged as against the defendant, Harry M. Bennett that he as grantee, had received a conveyance of cer-tain property without consideration, and in fraud of the rights of the plaintiff. However, the circumstances sur-rounding the commencement of this suit and its immediate prior history are such as to warrant the court in the belief that the defendant, A. W. Bennett, had notice of the fact that this suit was about to be commenced and made this deed with such knowledge, and that the same was made with the ap-parent intention of defrauding the plaintiff of any rights she might have by virtue of the marriage relations, and to defeat any decree for alimony, and she was, under the laws of this territory, in a position to question the conveyance. While it is true that the courts of this territory have held that while the family relations exist, and while they continue as one harmonious family, that the wife and children are not in a position to question a conveyance by the husband of his property to a stranger, this doctrine has never been held to the extent that a wife, when forced by abandonment, cruelty, or any of the other statutory causes, seeks in a court of justice for a dissolution of the marriage relations, or to secure sep-

arate maintenance or alimony, cannot question such a conveyance, whenever the same affects her rights.

In the case of *Small v. Small,* 42 Pac. 323, a decision rendered by the supreme court of Kansas and a decision which is cited with approval by our own supreme court in the case of *Farrell v. Puthoff,* 13 Okla. 164, the supreme court of Kansas says:

"There is no reason why a wife, whose husband has deserted her, and refused to perform the duty of maintenance, or who, by cruel treatment, has compelled her to leave his house and commence proceedings for divorce and maintenance, should not be viewed as a quasi creditor in relation to the alimony which the law awards her. So long as she is receiving maintenance, and is under his wing, as it were, she is bound by his acts as to his personal estate; but when she is compelled to become a suitor for her rights, her relation becomes adverse, and that of a creditor in fact, and she is not to be balked of her dues by his fraud." Section 2774, of Wilson's Statutes, 1903, provides:

"Every transfer of property, or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor."

Now if the wife, technically speaking, is not a creditor, she is included in the term "other person," in the statute regarding fraudulent conveyances; and when the husband, by cruel treatment, compels the wife to leave him, and bring an action for divorce, and alimony, she is a quasi creditor in relation to the alimony which the law awards to her. (*Tyler v. Tyler,* 21 N. E. 616; *Small v. Small,* 22 Pac. 323; *Farrell v. Puthoff* 13 Okla. 159.)

Now we fail to see how the question of divorce, or the allegations of the petition charging the grounds for divorce

between the plaintiff, Sarah Grace Bennett, and A. W. Bennett, could in any way affect any of the issues joined between the plaintiff, Sarah Grace Bennett, and the defendant, Harry M. Bennett. The only issues between these parties was the question whether she was entitled to alimony, and as to the *bona fides* of the deed between the defendant, A. W. Bennett and the defendant, Harry M. Bennett. As to this portion of the petition, the defendant Harry M. Bennett was permitted to, and did file a denial, and he was, as the record shows, instructed by the court that he had a right to be heard and to introduce testimony, and cross examine the witnesses, and to object to testimony on all subjects relating to any of the issues to which he was a party. This it seems to us, is all that he was entitled to under the pleadings in this case.

The next assignment of error is that the court erred in permitting the defendant in error to prove the marriage between herself and A. W. Bennett by oral testimony over the objection of the plaintiff in error, the records relating to the marriage being the best evidence. As to this assignment of error, the only answer necessary to make, is that the only party who could by any possibility have been injured by it, has failed to ask for or take an appeal.

The next assignment of error is that the court erred in finding for the defendant in error and in not finding in favor of plaintiff in error, this being an action to set aside plaintiff in error's deed. The petition should have averred and the plaintiff should have shown that the defendant, A. W. Bennett, the grantor in said deed, had no other property out of which any prospective judgment could be made, or that there was no adequate legal remedy. The record in this case containing the petition and the deed from A. W. Bennett to

Harry M. Bennett, shows that the real estate conveyed by the said A. W. Bennett to Harry M. Bennett, was of the value of $10,645.00, and that at the same time, notes and securities were sold to one Johnson of the value of $3000.00, and the evidence contained in the record from pages 136 to 146, shows that the remaining property did not exceed in value $2400, which would be a strong indication that the amount of property owned by the defendant, A. W. Bennett, in the Territory of Oklahoma, and which could be made available for the payment of alimony would be wholly insufficient to make anything like satisfactory provision for the maintenance and alimony for his wife, and the reasonable and proper support of his minor child, James Richard Bennett, or to pay the amount of the judgment which was afterwards rendered by this court. But we think that when a husband makes a void conveyance of his property to his son for the apparent purpose of defeating a decree for alimony, that the burden of proof is upon the grantee to show the fairness of the transaction, and that the same was made for a valuable consideration. Such is the doctrine laid down by the supreme court of Nebraska in the case of *Atkins v. Atkins et al.* 25 N. W. 724. In that case, in the syllabus, the supreme court of Nebraska say:

"Where a husband, while a divorce suit was pending, conveyed all his property to his daughter, the offspring of the plaintiff and defendant, the apparent purpose being to defeat a decree for alimony: *Held*, that the burden of proof was on the grantee to show a valuable consideration."

And on page 725, in the opinion, the court says:

"The testimony shows that Martha I. Courtnay is the daughter of the plaintiff and Henry Atkins; that the property in question is all the property in this state, so far as is

known, possessed by Henry Atkins, and the effect of the transfer is to defeat the plaintiff's decree for alimony. Sec. 17, c. 32, Comp. St. declares every conveyance or assignment 'made with the intent to hinder, delay or defraud creditors or persons of their lawful rights, damages, forfeitures, debts, or demands,' etc., void. Rights of alimony certainly are included in this provision."

In support of this doctrine, they cite *Morrison v. Morrison*, 49 N. H. 69; *Chase v. Chase*, 105 Mass. 385; *Draper v. Draper*, 68 Ill, 19; *Turner v. Turner*, 44 Ala. 437. The court continuing in the opinion, says:

"A transfer, made while a suit is pending, of all the debtors property, is merely a badge of fraud. It may be shown to be valid because the mere pendency of the suit does not make the transfer void. But where all the debtor's property is conveyed, with the apparent intention on the part of the grantor to defeat a judgment about to be recovered against him, and these facts are known to the grantee, the burden of proof rests upon her to show a valuable consideration."

It will be noticed that the language of the Nebraska statute as to fraudulent conveyances is almost identical with our own. It will be noticed that the recitals as to the considerations in this deed were "for and in consideration of love and affection, and $1.00 in hand paid." There was conveyed by the defendant, A. W. Bennett, to the defendant, Harry M. Bennett, property which the proof shows was of the value of nearly eleven thousand dollars. We think the general rule is that fraud may be shown in the conveyance of property made to hinder, delay or defraud creditors, by the conduct and appearance of the parties, the details of the transactions, and the surrounding circumstances and may be inferred when the facts and circumstances are such as to lead a reasonable man to believe that the property of the debtor

has been attempted to be withdrawn from the reach of his creditors. This doctrine is announced in the case of *Thompson v. Crane,* 73 Fed. 327; *Cox v. Cox,* 17 Pac. 847; *Clinton v. Rice,* 44 N. W. 790.

Now let us for a moment look at the circumstances surrounding this transaction: These divorce proceedings were instituted on the 21st day of May, 1903; this deed was executed on the 20th day of May, 1903, and acknowledged before the present attorney for the defendant, Harry M. Bennett, to wit: C. B. Wilson, Jr., on the 20th day of May, 1903, and filed for record in the office of the register of deeds in Lincoln county, at Chandler, Oklahoma, on the 20th day of May, 1903, at 10 P. M.. This, to say the least, would be an unusual time for the filing of a deed for record, and it would seem to us it would be a time of the day at which a record would not be made except for urgent reasons. It seems to us that the fact that this deed was made on the very day before instituting these divorce proceedings, and recorded at this unusual hour, would be a circumstance which would at least seem suspicious, with the further fact that this deed conveys property worth between ten and eleven thousand dollars, and conveys that property to a minor child eleven years of age, for no consideration other than love and affection and one dollar, and in view of the fact that the very next day proceedings were commenced which might reasonably be expected to result in a judgment against the grantor in the deed, would be a sufficient circumstance to make the court look with suspicion on the transaction.

The supreme court of Oregon, in the case of *Weber v. Rothchilds,* 15 Pac. 650, in the syllabus, says:

"Plaintiff brought suit against her husband for divorce and alimony, and against W. to set aside an alleged fraudulent conveyance from the husband to him, and to subject the property to the payment of the alimony. W. defended as a *bona fide* purchaser. The consideration of the deed was $2500, and the property conveyed was worth eight thousand or nine thousand dollars. W. on the same date of his alleged purchase gave a bond agreeing to reconvey within a given time for $3000, and stating that a material part of the consideration for his conveyance was his agreement to reconvey. It also appeared that the husband had given abundant cause for a divorce and that shortly after he became aware that his wife had discovered his conduct he made this conveyance: *Held*, (1) that the consideration was so inadequate as to raise a presumption of want of good faith in W.; (2) that it was necessary for his answer and evidence to show that he was a purchaser for value and without notice, and that plaintiff was not obliged to prove the negative of these facts in the first instance; (3) as it did not appear that W. had paid the consideration, the conveyance conceded to be fraudulent on the grantor's part should be set aside, as a mere obligation to pay would not sustain it; (4) that the bond created a trust in W. for his grantor's benefit."

And in the opinion, on page 652, the court says:

"* * * To sell this property for $2500 was too great a sacrifice. The price alleged to have been paid was so entirely inadequate as to have put a prudent man on inquiry. But without placing the decision of this case on the ground suggested, there is another question presented which deserves attention. It is the purchaser for value and without notice from a fraudulent grantor who is protected under the statute. Does the defendant's answer show him to be such purchaser? To constitute a good defense, facts must be alleged showing that the purchaser paid a valuable consideration for the property; that at the time of the payment he had no notice of the outstanding equity; or, as in this case, of the fraud-

ulent intent of his grantor, and that he acted in good faith. The same elements that were necessary to constitute a good plea in bar in this class of cases under the former equity practice are necessary to make a good answer under the code. The code has only abolished forms, it has not destroyed substance. The answer must therefore aver that the person who conveyed or mortgaged to the defendant was seized in fee, or pretended to be so seized, and was in possession if the conveyance purported an immediate transfer of the possession at the time when he executed the purchase or mortgage deed. It must aver a conveyance, and not articles merely; for if there are articles only, and the defendant is injured, he may sue at law upon the covenants in the articles. He must aver the consideration for, and the actual payment of, it; a consideration secured to be paid is not sufficient. (Story Eq. Pl. 805.) Further: The plea must also deny notice of the plaintiff's title or claim previous to the execution of the deed and payment of the consideration; and the notice so denied must be notice of the existence of the plaintiff's title, and not merely notice of the existence of a person who could claim under that title. * * * But the notice of fraud must also be denied generally, by way of averment in the plea; otherwise the fact of notice or of fraud will not be at issue. * * *"

Further on in the opinion, the court says:

"* * * Is the plaintiff required to prove a negative by showing that the defendant did not pay a valuable consideration; or, having shown the fraudulent intent and purpose of the grantor, may he stop and require the grantee to prove that he had paid value in order to protect his title? Here the defendant, Rothchild has alleged facts in one part of his answer tending to show that he is a *bona fide* purchaser for value, without notice, of this property, but he has offered no evidence whatever on these issues. The plea of a *bona fide* purchaser for value, as here alleged, is an affirmative defense interposed by the defendant, and in this connection it is not

perceived that it differs from other affirmative defenses. The party having the affirmative of the issue must offer evidence to support it. Another rule of law, equally elementary, which is frequently applied in such cases, is that when a fact is peculiarly within the knowledge of a party, he must furnish the necessary evidence of such fact."

In the case of *Strong v. Lawrence,* 12 N. W. 74, the Iowa supreme court say:

"Where the difference between the price paid and the actual value of the property is apparent and great, the conveyance will be regarded as valid to the extent of the price paid. Where a man sets up a valid conveyance in opposition to the rights of pre-existing creditors he is required to show that his means, independently of the property conveyed, were abundantly able to satisfy the claims of his creditors."

In the case of *Jonathan Hunt et al. v. W. R. Spencer,* 20 Kans. 126, the supreme court of Kansas say in the syllabus:

"A voluntary conveyance can be sustained as against existing creditors, only when under all the circumstances of the case the property retained by the grantor furnishes reasonable and adequate provision for the discharge of his debts."

Therefore we believe that in a case like the one at bar, where the wife through the cruel treatment of the husband is compelled to resort to the courts to secure her rights of alimony and maintenance, she is a quasi creditor, and the conveyance to the plaintiff in error being voluntary, and without consideration, and being a conveyance which operates to hinder, delay, and defraud her in the collection of her rights, it is immaterial whether the grantee had knowledge of the fraud, or whether he participated in it or not, because the principle of law is that in such cases the conveyance must

fail, as the law requires that the grantor must be just to his creditors before he can be generous to his friends. Hence, we think for the reasons herein expressed, and under the authorities herein cited, that the action of the court in defaulting the defendant, A. W. Bennett, and not permitting him to answer on account of his failure to pay alimony, was in no way prejudicial to the interests of the plaintiff in error, and if any reversible error was committed, it is not available, because the defendant, A. W. Bennett has taken no appeal, and is not a party to this record. From a view of the entire case, we are of the opinion that no reversible error has been committed, and no substantial injustice has been done. The judgment of the district court is hereby affirmed, at the cost of the plaintiff in error.

Burford, C. J., who presided in the court below, not sitting; Burwell, J. agreeing with the judgment but not in the reasons herein expressed; all the other Justices concurring.