## SPRADLING v. SPRADLING.

No. 7553—Opinion Filed Jan. 21, 1919.

Rehearing Denied May 27, 1919.

(181 Pac. 148.)

**1. Divorce—Suit for Alimony After Decree —Statute.**

A suit against a former husband for alimony may be maintained by a former wife, who has obtained a decree of divorce from him, upon constructive service, in a court of another state having jurisdiction over neither his person nor property; such decree not being res judicata of the subject of alimony, and the marital status, under the circumstances, being held not indispensible to cognizance of alimony in this state.

**2. Divorce—Alimony Pending Decree—Jurisdiction of Supreme Court.**

In an action pending on appeal to review a judgment awarding alimony in a proceeding independent of divorce, the Supreme Court, under its appellate jurisdiction in cases of equity, as an incident to such jurisdiction has authority to grant alimony pending a determination of such appeal, and also the necessary counsel fees and suit money for the prosecution of such proceeding.

**3. Divorce—Awarding of Alimony—Appeal —Dismissal,**

Where an appeal is taken without supersedeas, from a judgment awarding alimony and a sum for the maintenance and education of minor children, and plaintiff in error refuses to comply with the order of this court to pay to the clerk, for the benefit of an indigent defendant in error, certain counsel fees, etc., and, having disposed of his property, goes and remains without the confines of the state and beyond process of the court, the appeal may be dismissed.

**4. Constitutional Law — Jury — Right to Jury Trial.**

The dismissal of an appeal under such circumstances is not a denial of any constitutional right of the plaintiff in error.

(Syllabus by Bleakmore, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Suit by Nannie Spradling against S. S. Spradling for alimony and allowance for the support of the minor children of parties after divorce. There was an order making allowance for temporary support, counsel fees, etc., and restraining defendant from disposing of his property pending action, and a further allowance for maintenance and for permanent alimony, and defendant brings error. Appeal dismissed

See. also, 74 Okla. 274, 158 Pac. 900.

Leahy & MacDonald, for plaintiff in error.

Noffsinger & Broome, for defendant in error.

Opinion by BLEAKMORE, C. On March 10, 1913, suit for alimony and an allowance for the support of the minor children of the parties was commenced in the district court of Osage county against S. S. Spradling, by Nannie Spradling, who, by decree of the Wolfe circuit court of Wolfe county, Ky., had obtained a divorce from him in an action in which she was plaintiff and he was defendant, but wherein, by reason of his having removed with his property from that state and acquired a residence elsewhere, constructive service only was had upon him.

At the beginning of the suit the district court of Osage county made an allowance for the temporary support of the plaintiff and her minor children and for attorney's fees and suit money, and issued an order restraining the defendant from disposing of his property pending the action.

Defendant sought by writ of prohibition to prevent the trial court from entertaining jurisdiction, enforcing its orders, and proceeding to determination of the cause. The writ was denied by this court. Spradling v. Hudson, District Judge, 45 Okla. 767, 146 Pac. 588. Thereupon defendant paid a small portion of the allowance, but subsequently disregarded the order of the district court by refusing to pay the balance, contemptuously disposed of all of his property, and removed from this state. Upon further proceedings in the trial court plaintiff was awarded $5,000 for the maintenance and education of the minor children, and $2,500 as permanent alimony. From this judgment the defendant, S. S. Spradling, without supersedeas, appealed.

Thereafter, on June 6, 1916, Nannie Spradling, upon proper application to this court, was allowed $500 as suit money necessary to her defense here, counsel fees, and the maintenance of herself and children pending the determination of such appeal, and the defendant was ordered to pay same to the clerk of this court within 30 days from that date. Spradling v. Spradling, 74 Okla. 274, 158 Pac. 900.

Although amply able to do so, he has refused to comply with this order, and is now shown to be without the state, a fugitive from justice, and beyond the jurisdiction of this court.

The case is now before us on motion of defendant in error to dismiss the appeal for

failure of the plaintiff in error to comply with the order of this court.

For convenience the parties are referred to as they appeared in the trial court.

It is contended (1) that the order of June 6, 1916, was in excess of the jurisdiction of this court, and therefore void, for the reason that alimony pendente lite, counsel fees, and suit money are cognizable only in cases where the marital relation and obligation subsist between the parties: and (2) that to dismiss the appeal under the circumstances would be to convict defendant of contempt without a hearing, and close to him the courts of justice of this state, in violation of his rights under section 25 and section 6, art. 2, of our Constitution.

We do not regard either contention as tenable. The Kentucky court granted plaintiff a divorce on statutory grounds for the fault of the defendant. He was a non-resident of the state, and service of process was had upon him by publication only. The court took jurisdiction of nothing except the marriage status; and under these circumstances, in the absence of jurisdiction of either the person or property of defendant, any attempt to render a decree against him in that suit, essentially in personam, for the payment of alimony would have been void. MacDonald v. Mabee, 243 U. S. 90, 37 Sup. Ct. 343 61 L. Ed. 608, L. R. A. 1917F, 458.

The decree of the Kentucky court, to the extent of dissolving the marriage between the parties, is conceded to be valid: and under the full faith and credit clause of the federal Constitution we may properly give force and effect to it only as determinative of their marital status. Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. And this view in no respect conflicts with the principle announced in Thompson v. Thompson, 226 U. S. 551, 33 Sup. Ct. 129, 57 L. Ed. 347, in which case a decree of divorce had been granted the husband for the fault of the wife in a state where by misconduct she might forfeit her right to maintenance.

A review of the authorities, and an expression of opinion as to whether, independently of legislative enactment, alimony is cognizable only in proceedings ancillary or incidental to divorce, would seem inapposite, as our statute recognizes an action for alimony alone.

And it is doubtless true that, where the defendant is personally served with process, a decree of divorce may ultimately determine the property rights as well as the marital status of the parties; but with such a judgment we are not concerned in the instant case.

The primary question before us for decision seems to be the right to maintain a suit for alimony in this state against a former husband by a woman who has obtained a divorce from him upon constructive service in a court in another state having jurisdiction over neither his person nor property. The precise question does not appear to have been determined by this court; but upon consideration of decisions from other jurisdictions, we are persuaded that, numerically and by the better reasoning, modern authoritative cases sustain the conclusion that such an action is maintainable independently of statutory authorization.

In Cox v. Cox, 19 Ohio St. 502, 2 Am. Rep. 415, it is held:

"A husband deserted his wife in this state, where both parties, up to the time of the desertion, were domiciled. To a petition filed by the wife for divorce and alimony the husband appeared and answered, setting up a decree of divorce obtained by him in another state, in a proceeding in which there was no jurisdiction of the person of the wife except by constructive service, and of which proceedings she had no actual notice. Held, that the domicile of the wife remained unaffected by the desertion of the husband, and that the decree of divorce was no defense to her petition for alimony."

In Thurston v. Thurston et al., 58 Minn. 279, 59 N. W. 1017, it was held that while a decree of divorce obtained by a husband against his wife in another state on constructive service was valid, yet "such judgment determined nothing but that the parties were divorced, and, being in rem, is neither res judicata nor an estoppel as to the question of alimony, and the wife, remaining domiciled in this state, may maintain an action for alimony to be awarded out of his property in this state, and the fact that the marriage relation is dissolved will not defeat such action."

In Turner v. Turner, 44 Ala. 437, in which alimony was awarded the wife, it was held:

"A suit for divorce, commenced by the wife in the courts of this state, who is herself resident in this state at the time she sues, is not to be affected by another suit, subsequently commenced by the husband, for a divorce against her in the courts of another state, to which he has removed, and to which the wife did not accompany him, and to which suit the wife was not a party, except by publication, although the husband's suit may be terminated by a de-

cree in his favor against the wife, before her suit against him is terminated here. The jurisdiction of the court of this state having attached in favor of the wife here, it will continue to be entertained, until its powers are fully enforced in her favor, regardless of the decree in favor of the husband rendered by the court of such other state."

And in the body of the opinion it is said:

"The Indiana divorce in favor of the husband, Matthew Turner against his wife, the complainant, may protect him upon a charge of bigamy, should he marry again in this state. * * * If it is valid, it unmarries him, and sets him free from his marital vows to her. He is no longer the complainant's husband. But it does not settle her right to alimony; it does not settle her right to dower in his lands, and her statutory right to distribution of his property in this state, in the event she should survive him, nor any other interest of a pecuniary character she may have against him."

In Wright v. Wright, 24 Mich. 180, it is held:

"Where the husband resides in Indiana and the wife resides in Michigan, either state has authority, in respect to the marriage relation, to determine upon its validity or to dissolve it, so far as the party resident within its limits is concerned; and if one proceeds in one state such proceeding is no legal impediment to the other's taking like steps in the other state, where it is necessary to the protection of any property or other rights."

"A bill for divorce. * * * on the ground that the defendant had obtained a divorce from the complainant in the state of Indiana, on appeal by the defendant from the decree below to this court, does not differ, as regards the granting of alimony from any other divorce suit."

See, also, Cook v. Cook. Imp., 56 Wis.195, 14 N. W. 33, 443, 43 Am. Rep. 706.

In Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A. (N. S.) 1106, Ann. Cas. 1912C, 284, it is held:

"A wife remaining at the matrimonial domicile may maintain against her former husband in the courts of that state a suit for alimony after a decree of divorce has been granted to him in another state upon mere publication of process, without actual notice to her of the suit, or her appearance therein; where, under the statute, the courts may decree either divorce or alimony without the other, at least, where the foreign decree is silent upon the subject of alimony."

In Rogers v. Rogers, 15 B. Mon. (54 Ky.) 292, it is held:

"On bill filed in Kentucky the husband was divorced from his wife. Subsequently, in Ohio, a court, having jurisdiction of the subject-matter and persons, decreed alimony. Held, that the decree of the court of Ohio could not be questioned in this court in a suit to recover its amount."

In Adams v. Abbott, 21 Wash. 29, 56 Pac. 931, it is held:

"Ballinger's Ann. Codes & St. § 5723, requiring the court, on dissolving a marriage, to make such decree with respects to the property of the parties as will appear just, does not make such decree a necessary part of the decree of divorce; and where a decree of divorce obtained by a wife in a foreign state, on constructive service, and without personal jurisdiction of defendant, makes no provision for alimony or with respect to the property of the parties, and the husband thereafter becomes a resident of Washington, the parties having community property there, the wife may maintain an action in such state for alimony and for the adjudication of her property rights."

In Woods v. Waddle, 44 Ohio St. 449, 8 N. E. 297, it is held:

"A. and P. were married in West Virginia at their domicile, where A. retained his domicile, but P. went to Tennessee, where, in ex parte proceedings, she obtained a divorce a vinculo from A.; but, as there was no personal service upon A., her application for alimony was dismissed without prejudice and to enable her to sue for it elsewhere. She then brought suit here for alimony alone, and to reach certain property in Ohio belonging to A., in which case she obtained service upon A., who also appeared and filed pleadings in the case, and on trial the court found sufficient cause, and allowed her alimony. Held, P. had a right thus to bring her action for alimony alone, and she could have her claim therefor determined, and, if sustained upon trial, the court could allow her reasonable alimony out of the property of A."

In Bodie v. Bates, 95 Neb. 757, 146 N. W. 1002, L. R. A. 1915E, 421, it was held:

"Where it clearly appears that in a suit for divorce in a sister state, under the statutes of which the court did not have jurisdiction to take cognizance of real estate then owned by the husband in this state, nor, without consent of the parties, to consider the same in fixing the amount of alimony, and no such consent is affirmatively shown to have been given, and it also clearly appears that the court in allowing alimony to the wife did not take cognizance of or consider such real estate in fixing the amount of such allowance, but allowed the wife a reasonable sum only, based upon the property owned by the husband situated within the jurisdiction of that court, the judgment so rendered is not a bar to an independent suit in this state by the wife, after divorce, to recover a reasonable amount

of alimony out of the real estate of the husband situated in this state; nor will the fact that she accepted and has retained the allowance made to her by the judgment of the other court, out of the property of her husband situated within the jurisdiction of that court, estop her from prosecuting such suit."

Determining, as we do, that the Kentucky divorce was not res judicata as to the matter of alimony, and, under the circumstances of the instant case, that the subsistence of the marital status is not indispensible to cognizance of alimony, we hold that the action was properly maintainable between the parties in the trial court; which leaves for inquiry the question of the authority of this court, on appeal, to make the order of June 6, 1916, relative to suit money, attorney's fees, and maintenance of defendant in error and the children of the marriage pending an appeal.

By section 4967, Revised Laws 1910, it is provided:

"After a petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may make and enforce by attachment such order to restrain the disposition of the property of the parties or of either of them, thereof, or for the control of the children and support of the wife or husband during the pendency of the action, as may be right and proper; and may also make such order relative to the expenses of the suit as will insure an efficient preparation of the case. * * *"

Manifestly, by virtue of the foregoing statutory provision, the trial court would have been authorized to make such an order.

The very gist of the present action is the enforcement of the natural and legal duty of a man to support his former wife and the children of his marriage although the marital tie has been severed, for his fault, in a prior action in which the performance of such duty could not be compelled. Such action is necessarily based upon the undischarged obligation of the marriage, and is as characteristically matrimonial as a suit for divorce and alimony or for the annulment of an alleged void marriage.

It appears to us on principle that the same rules with respect to alimony ad interim, counsel fees, and suit money should govern upon appeal in such action as are applied by this court in the exercise of its jurisdiction in other matrimonial actions.

By section 2, art. 7, of the Constitution, it is provided:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases, at law and in equity. * * *"

This provision of our Constitution would seem sufficiently comprehensive to confer upon this court by implication, without specifically designating them, all the powers requisite and incidental to orderly procedure and practice in the making and enforcing of such orders as are essential to the demands of justice in the disposition of appeals.

In Hunt v. Hunt, 23 Okla. 490, 100 Pac. 541, 22 L. R. A. (N. S.) 1202, an action for the annulment of a marriage wherein this court directed the payment of suit money and counsel fees by the plaintiff in error, it is held:

"In a suit at the instance of a husband to annul such marriage, the court, at any stage of the proceedings where he is shown to have property sufficient, may make and enforce an order requiring him to pay a reasonable allowance for the maintenance and support of his wife and a child born of such marriage, and a reasonable allowance for suit money to enable her to defend."

In Kostachek v. Kostachek, 40 Okla. 744, 124 Pac. 761, wherein alimony pendente lite, counsel fee and suit money were awarded in this court, and the foregoing constitutional provision considered it is said:

"The exercise of such authority by the appellate court is based on the theory that the jurisdiction to review decrees in divorce cases carries with it by implication the incidental power to make such allowances, such authority being indispensable to the proper exercise of proper appellate jurisdiction."

In Hartshorn v. Hartshorn, 67 Okla. 43, 155 Pac. 508, it is held:

"The Supreme Court under its appellate jurisdiction in cases in equity, as an incident to the exercise of such jurisdiction, has authority, in actions pending on appeal in said court, to review decrees in divorce proceedings, to grant alimony pending the determination of such appeal, and also the necessary counsel fees and suit money for the prosecution of such proceedings."

We are of opinion that the order of June 16, 1916, was made in the valid exercise of its judicial power by this court.

While it has been held that where jurisdiction of a defendant has been obtained by summons, a court is without power to strike his answer from the files, suppress testimony in his favor, and condemn him without consideration thereof and without a hearing on the theory that he has been

guilty of contempt (Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215), it has never been judicially determined, so far as we are informed, that a plaintiff in error who, as in the instant case absents himself and keeps beyond the process of the court while invoking its jurisdiction to grant him affirmative relief, may refuse to obey its lawful orders, and consistently urge a constitutional right to a trial by a jury to determine his guilt or innocence of admittedly contemptuous conduct, before such court is empowered to decline consideration of his appeal. In Hovey v. Elliott, supra, it was said:

"Whether, in the exercise of its power to punish for a contempt, a court would be justified in refusing to permit one in contempt from availing himself of a right granted by statute, where the refusal did not involve the fundamental right of one summoned in a cause to be heard in his defense, and where the one in contempt was an actor invoking the right allowed by statute, is a question, not involved in this suit."

Prior to the erection of the state the Supreme Court of the Territory of Oklahoma in Bennett v. Bennett, 15 Okla. 286, 81 Pac. 632, 70 L. R. A. 864, held:

"In this territory, in an action for divorce, the district court has power to punish a contempt of court in refusing to pay alimony awarded by it, by striking the defendant's answer from the record, or refusing to permit him to plead further in a case in which the defendant has voluntarily absented himself from the territory for the purpose of avoiding contempt proceedings for failure to pay such alimony, and punishment for contempt cannot be otherwise inflicted."

By section 25, art. 2, of the Constitution, it is provided:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Even if it could be consistently argued that a decision of the questions presented upon the motion to dismiss requires a determination of plaintiff's guilt or innocence of an indirect contempt of this court, and that dismissal of his appeal is a penalty within the purview of the foregoing constitutional provision, before the imposition of which he would be entitled to a trial by jury as to his guilt or innocence of such contempt, and an opportunity to be heard (a question unnecessary to decide), yet these rights, which are peculiarly for his benefit, he might waive.

"It is a well-settled principle of law, recognized by all appellate courts, that every one may waive a right intended for his own benefit if it can be relinquished without affecting the legal rights of others and without detriment to the community at large. * * * The right of waiver extends to and includes all descriptions of contractual, statutory, and constitutional rights, except such as are inalienable." State v. Frisbee, 8 Okla. Cr. 406, 127 Pac. 1091.

One of the ordinary methods of waiving a right is by acts or conduct indicating a purpose to relinquish the same. From the course of conduct pursued by plaintiff it may be conclusively inferred that he purposely prevented a jury trial, and avoided the opportunity to be heard personally relative to his refusal to comply with the order in question. His voluntary absence from the state, and refusal to submit his person to the jurisdiction of the court, renders such trial by jury, to which, by counsel, he asserts the right, a legal impossibility. At all times since his refusal to comply with the order of this court he has been afforded the claimed constitutional opportunity to be heard in regard thereto. However he has not seen fit, even through the medium of counsel, to offer any excuse for his contemptuous disobedience. The rights of which he might otherwise have availed himself by virtue of the Constitutional provision, supra, if applicable, he has waived.

Here the fundamental right of one summoned in a cause to be heard in his own defense is not involved. On the contrary, plaintiff is an actor invoking the jurisdiction of this court, seeking affirmative, progressive relief, while for seventeen months he has refused, and is still refusing, to comply with its lawful and reasonable orders, having fled from the confines of the state, and remained beyond the reach of its judicial process. This court has been at all times open to plaintiff in error for consideration of his appeal when he complied with its orders properly made in the progress thereof; but he may not rightfully insist upon an award of affirmative relief while willfully disregarding the rules of practice, reasonable orders, and methods of procedure made and adopted by this court. In order that the constitutional guaranty that "the courts of justice shall be open to every person, and speedy and certain remedy afforded for every wrong

and for every injury to person, property, or reputation, and right and justice shall be administered without sale, denial, delay, or prejudice," the courts of this state must be held to have inherent ·power to enforce all reasonable and lawful orders, for without such power an attempt to administer justice would inevitably result in failure to accomplish the purpose of the fundamental law.

The position of plaintiff in error that he may defy the court, frustrate the purpose of its lawful orders, and thus prevent his adversary from presenting her defense here, and yet compel consideration of his own plea for affirmative action by virtue of arrogated constitutional guaranties. is anomalous in the extreme.

The Criminal Court of Appeals of this state has frequently held that it will not consider an appeal unless the defendant is where he can be made to respond to any order or judgment which may be rendered in the case, and, where the ·defendant makes his escape from the custody of the law and is at large as a fugitive from justice, will dismiss his appeal. Tyler v. State, 3 Okla. Cr. 179, 104 Pac. 919, 26 L. R. A. (N. S.) 921; Tanner v. State, 5 Okla. Cr. 298, 114 Pac. 360; McGraw v. State, 7 Okla. Cr. 105, 122 Pac. 242; Belcher v. State, 9 Okla. Cr. 50, 130 Pac. 515. And such dismissal is held not a denial of due process of law.

In Reed v. Reed. 70 Neb. 779, 98 N. W. 73, the Supreme Court of that state said:

"We come now to the question as to whether or not the court erred in refusing to allow the plaintiff to proceed with the trial of his case without complying with the order for the payment of temporary alimony, and in dismissing the action because of an absolute refusal on plaintiff's part to comply with that order. This question seems to have been settled in the case of Brasch v. Brasch, supra [50 Neb. 73, 69 N. W. 392], where it was held that 'it was entirely within the discretion of the district court. when the sums allowed for temporary alimony should be paid, whether before the final hearing of the action, and as a condition precedent to the right of the husband to further prosecute or defend, or to postpone such payment until the final hearing.' It is contended, however. that the order of the court was a violation of the rights of the plaintiff as defined by section 13 of article 1 of the Constitution of 1875. An examination of that section convinces us that counsel has made a mistake in his citation, and that he intended to cite section 9 of article 1, which provides that 'all' courts shall be open. and every person. for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law and

justice administered without denial or delay.' Counsel seems to think that this section of the Constitution guaranteed him a trial of his case. whether he complied with the reasonable orders and rules of the court or not. In this he is mistaken. · Due process of law, as specified in this section, has been defined as follows: 'Law, in its regular course of administration, through courts of justice.' 'Due process of law in each particular case means such an exertion of the powers of the government as the settled maxims of law permit and sanction, under such safeguards for the protection of individual rights as those maxims prescribe for the cases to which the one in question belongs.' Ex parte Ah Fook, 49 Cal. 402. 'Due process of law is a course of lawful proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.' South Platte Land Co. v. Buffalo County. 7 Neb. 253 Due process of law may be said to be satisfied whenever an opportunity is offered to invoke the equal protection of the law by judicial proceedings appropriate for the purpose, and adequate to secure the end and object sought to be attained. The court in this case was open to the plaintiff for the trial of his cause whenever he complied with its reasonable rules of practice and its orders properly made in the process of the litigation. It cannot be successfully contended that a plaintiff may have a trial of his cause without regard to rules of practice, to forms or precedents, or the reasonable methods of procedure adopted by the courts. In order to guaranty the plaintiff a speedy trial, and that justice should be administered to him without denial or delay, our courts must be held to have the inherent power to enforce their reasonable orders; for without such power an attempt to administer justice would inevitably result in a failure to accomplish the end sought. It was within the power of the court to require the plaintiff to comply with its order before permitting him to proceed with the trial, and his refusal to comply with this order was the only thing which prevented him from having his case adjudicated upon its merits. If he had complied with this order. or if he had shown to a reasonable certainty that he was unable to comply with it, no doubt the court would have permitted him to try his case, instead of dismissing it without a hearing.

"The plaintiff alone is to blame for the situation in which he finds himself, and we recommend that the judgment of the district court be affirmed."

In Brown v. Brown, 22 Wyo. 316, 140 Pac. 829, 51 L. R. A. (N. S.) 1119, it is held:

"Where a husband sued out a writ of error to review a judgment against him in divorce, and the Supreme Court entered an

order requiring him to pay a specified sum to his wife's attorneys for preparing her defense, with which he failed to comply, such failure amounted to a civil contempt, and her remedy was to move to dismiss the proceedings in error, and not to punish him for contempt."

In the body of the opinion it is said:

"While the method of enforcing its orders by citation and punishment as for contempt may, in a proper case, be resorted to in this court, yet upon the facts here there is, in our judgment, a more effective remedy. The plaintiff in error is guilty, if at all, of a civil but not a criminal, contempt, He has failed without excuse to comply with the order of this court, and by his petition in error is seeking affirmative relief at the hands of this court. It is elementary that such conduct is not favored. One cannot refuse to obey the lawful order of a court and expect relief at the hands of the court. This rule is a salutary one, and has been often applied by the courts. Casteel v. Casteel, 38 Ark. 477; Peel v. Peel. 50 Iowa, 521; McClung v. McClung. 40 Mich. 493: Waters v. Waters, 49 Mo. 385; Zimmerman v. Zimmerman, 7 Mont. 114, 14 Pac. 665; Walker v. Walker, 82 N. Y. 260; Williams v. Williams, 6 S. D. 284, 61 N. W. 38. The motion for a citation to issue as prayed is refused. but this court is of the opinion that, if the order remains uncomplied with on June 1st next, to wit June 1, 1914, then a showing to that effect will support a motion to dismiss the proceedings in error."

In Bronk v. Bronk, 46 Fla. 474, 35 South. 870, 110 Am. St. Rep. 101, it is held:

"The appellate court will not determine the correctness of the action of the lower court in issuing an injunction and writ of ne exeat, and render a decree therein, while the appellant, who has escaped from custody, and in defiance of the court and its writs, remains beyond its jurisdiction and renders it powerless to enforce any decree upon this feature of the case which it might render."

In the body of the opinion it is said:

"This case having been reached for final disposition, it now appears by another sworn return of the sheriff that John P. Bronk has not returned to his custody, and is now out of the jurisdiction of this court. The appellant having, since he took appeal, voluntarily placed himself in contempt of the orders of the court below, and having gone beyond the jurisdiction of this court so that no order or decree it might make in the premises could be personally enforced against him, we are confronted with the question whether he has a right to a hearing on questions based on the injunction and ne exeat orders. Doubtless the general rule is that a party is not deprived of any strict legal right to be heard by placing himself in contempt of the

court, especially if there be other means available by which the court may enforce its orders. Hovey v. Elliott, 127 U. S. 409, 428, 17 Sup. Ct. Rep. 841, 42 L. Ed. 215, and cases there cited. But the right to be heard upon appeal or writ of error has not been held to be one which a party cannot deprive himself of by his voluntary act of putting himself in contempt of the court by escaping from custody and evading the power and process of the law and the courts. It is distinctly held in the above-cited case [167 U. S.], on pages 443 and 444 (17 Sup. Ct. 841, 42 L. Ed. 215), that such a question was not involved in that suit. In this state it is decided that an appellate court will refuse to hear a criminal case on writ of error, where the plaintiff in error has escaped. and is not within the control of the court below. either actually by being in custody. or constructively by being out on bail. Woodson v. State 19 Fla. 549. This case has been repeatedly followed in this court. The principle of those cases applies here. The court will not, at the instance of the appellant, determine the correctness of the action of the lower court in issuing the injunction and writ of ne exeat, and render a decree therein, while the appellant, in defiance of the court and of its writs, remains beyond its jurisdiction, and renders it powerless to enforce any decree upon this feature of the case which it might render. In the case of State v. Ackerson, 25 N. J. L. 209, the defendant had been arrested on a capias, and had suffered himself to be rescued, and had escaped from custody. It was held that he was in contempt, and had no standing in the court whose process he resisted and whose authority he contemns. and is not entitled to be relieved by that court and that the appellate court would not interfere in a cause where the court below ought not and would not. Freese v. Swayze. 26 N. J. Eq. 437: Mussina v. Bartlett. 8 Port. (Ala.) 277: People v. Horton. 46 Ill. App. 434, 438."

In Wright v. Wright, supra, the Supreme Court of Michigan made the following order:

"We see no difference between this and any other divorce suit, so far as the question of alimony is concerned. An allowance of $75 is ordered to be paid within thirty days or the appeal will be dismissed."

In Peel v. Peel, 50 Iowa, 521, it is held:

"In an action for divorce by the wife. the failure of the husband to obey an order of the court directing the payment of alimony will only in extreme cases authorize the striking of his answer from the files.'

"Where the wife is defendant, the failure or refusal to comply with the order may very properly be punished by striking the petition or dismissing the case."

In White v. White, 148 App. Div. 883, 132 N. Y. Supp. 1042, it is held:

"Where defendant in divorce, by his refusal to obey the orders of the court as to alimony and counsel fees, and to provide the expenses of plaintiff's opposition to his appeals, made it impossible for plaintiff to oppose such appeals, they will be dismissed."

And in the body of the opinion it is said:

"The defendant, by his insistent refusal to obey the orders of the court as to the alimony and counsel fee and for providing the expenses of the plaintiff in opposing his appeal, and his withdrawal from this state, has rendered it impossible for the plaintiff to oppose these appeals and sustain the judgment and orders appealed from. Certainly the court cannot allow a party to an action to treat the orders of the court with contumely and contempt, and at the same time allow him to prosecute an appeal, especially where it appears that a compliance with the order is essential to the respondent to sustain the judgment and orders appealed from. There is no question of inability of the defendant to comply with the judgment and orders. He has simply treated the orders of the court with contempt, and withdrawn from its jurisdiction, so that they cannot be enforced."

See, also, Waters v. Waters, 49 Mo. 385; Tuttle v. Tuttle, 21 N. D. 503, 131 N. W. 460, Ann. Cas. 1913B, 1; Casteel v. Casteel, 38 Ark. 477; Buehler v. Buehler, 38 Nev. 500, 151 Pac. 44.

The appeal is dismissed.

By the Court: It is so ordered.