MILLER v. MILLER.

*99 P. 2d 515.*

No. 28747.   Feb. 20, 1940.

Stickel & Stickel, of Newark, N. J., and Ladner & Livingston, of Tulsa, for plaintiff in error.

M. C. Rodolf, of Tulsa, for defendant in error.

DAVISON, J. This action was instituted in the district court of Tulsa county on the 29th day of May, 1937, by Elsie A. Miller, a resident of New Jersey, as plaintiff, against Herbert Frederic Miller, a resident of Oklahoma, as defendant. The parties had formerly been husband and wife. The plaintiff sought by this action to obtain permanent alimony, alimony pendente lite, and suit money, including counsel fees.

The judgment of the trial court was for the defendant. The plaintiff appeals, appearing herein as plaintiff in error, thus preserving the order of appearance in this court. Our continued reference to the parties will be by their trial court designation.

The plaintiff and defendant were married in New York in 1911 and lived together, as man and wife, until 1920, when they separated. One child, a girl, was born to them in 1916. The girl had attained her majority prior to the institution of this action.

In September of 1922, Mrs. Miller instituted an action for divorce in New Jersey, and in November of 1923, obtained a final decree. The divorce was granted on the grounds that Mr. Miller had deserted the plaintiff.

In the decree of divorce, which was based upon service by publication, there was no adjudication or attempted adjudication as to alimony, maintenance, or division of property. However, on June 30, 1920, which was after the separation and before the institution of the divorce proceedings, the parties entered into a contract.

By the terms of said agreement the defendant agreed to convey and deliver to the plaintiff the property formerly occupied by them as a home in East Orange, N. J., and to free the same from the existing encumbrances by the payment thereof. He also agreed to pay her attorneys' fees in the sum of $250 and to pay her $50 per week for the support of herself and child until July 1, 1923. It was also stipulated that:

"* * * On or before June 1, 1923, the parties hereto shall agree, if possible, as to the provision to be made by the party of the first part for the maintenance and support of the party of the second part and her daughter, Elsie Julia Miller, subsequent to July 1, 1923."

The defendant conveyed the property, freed the same from encumbrances, and made the payments contemplated by the foregoing agreement. On May 24, 1923, Mr. Miller wrote the plaintiff saying that commencing with July 1, 1923, he would pay her $250 per month. An examination of this and subsequent correspondence in connection therewith reflects that no agreement was made as to how long such payments should continue.

Under the arrangement, the defendant made payments in the amount contemplated until June 1, 1932. Thereafter, and until March 1, 1935, he paid $200 per month. He then paid $150 for two months, and from April 1, 1935, to May 1, 1937, he paid $100 per month, and for May of 1937, he paid $67.74; thereafter, he made no further payments. These payments, when added to the value of the house previously conveyed (which together with the furniture therein contained and also delivered to the plaintiff was valued by the defendant at $15,000), made the aggregate amount paid $58,867.74.

This action was then instituted. The date of its institution (which as we have noted was May 29, 1937) was during the latter part of the month for which the last monthly payment was made. The theory upon which plaintiff sought to recover in the trial court was that she was entitled to alimony for support and maintenance by reason of the former existence of the marriage relationship between herself and the defendant. She did not seek to recover on the agreement or arrangement, but, on the contrary, specifically stated in her petition and through her counsel to the court in the trial of the case that she did not rely upon the agreement or arrangement as the basis of recovery, but presented the same for the persuasive effect to which it was entitled as a matter of law, to enable the court to formulate a better judg-

ment in determining the amount of alimony which she was entitled to receive.

The plaintiff having obtained her decree of divorce in another jurisdiction, based upon service by publication, and no attempt having been made in that proceeding to determine what alimony she should receive, her legal right to subsequently maintain an action in this jurisdiction to determine the amount of and recover permanent alimony is established. West v. West, 114 Okla. 279, 246 P. 599. Likewise, the plaintiff could also in this state seek counsel fees and alimony pendente lite, Spradling v. Spradling, 74 Okla. 276, 181 P. 148, although there is elsewhere a division of authority on the question. 17 Am. Jur. 455.

Although, in the absence of a previous adjudication of liability elsewhere, residence of one of the parties is essential to the maintenance of this type of action (Anderson v. Anderson, 140 Okla. 168, 282 P. 335), the residence of the defendant is sufficient. Restatement of the Conflict of Laws, par. 463, page 552.

In connection with its judgment, findings of fact and conclusions of law were, upon request, made by the trial court, from which it appears that the theory upon which recovery of permanent alimony was denied was that the defendant had adequately discharged his duty to pay alimony by the payments voluntarily made pursuant to the agreement or arrangement existing between the parties subsequent to their separation. Counsel fees and alimony pendente lite were also denied.

In presenting her case on appeal the plaintiff attempts to attach a greater legal significance to the contractual arrangement existing between herself and her husband than was sought to be attributed to it in the trial court. She now states that she is entitled "to recover judgment based on the written maintenance, alimony, and property settlement contract. * * *" She asserts that the arrangement between the parties, though indefinite, as to the duration of time during which monthly payments should be made, should be construed to contem-

plate the continuance of such payments during the joint lives of the parties, and, as so construed, should be enforced as a valid and binding contract. She in effect invokes as applicable the doctrine of Murphy v. McElroy, 185 Okla. 388, 92 P. 2d 369 (but consider, also, McRoberts v. McRoberts, 177 Okla. 156, 57 P. 2d 1175).

As a general rule (subject to exceptions not here involved) it is not permissible for a party litigant to seek relief in this court on appeal on a different theory than that presented to the trial tribunal (A. Morrison et al. v. Atkinson et al., 16 Okla. 571, 85 P. 472; American Finance Corporation v. Spurgin, 183 Okla. 556, 83 P. 2d 568), and insofar as the theory presented by the plaintiff as outlined above constitutes a departure from the theory presented by her in the trial court, it will not be considered herein. In order to determine the precise theory upon which plaintiff proceeded in the trial court, we have examined the record. The following excerpt from her amended petition epitomizes her position. She therein averred:

"That neither said agreement of June 30, 1920, nor said agreement of on or about May, 1923, have ever been submitted to or approved by any court nor has any decree or judgment for maintenance, alimony or a division of property been rendered or entered by any court between the plaintiff and the defendant; and that under the statutes and laws of New Jeresey and of Oklahoma such agreements for alimony do not become and are not binding agreements as contracts unless and until approved by a court of competent jurisdiction and no action upon contract can be maintained thereon. * * *"

The trial court so understood this case, as was evidenced by the following remarks made in a colloquy between court and counsel on the matter:

"Mr. Rodolf: Now, if the court please, we want to know, and I think we are entitled to that, we have been confronted with this all the way through this trial, trying to determine whether or not they are suing on the valid contract, which they contend is a valid contract. Now, if they have a valid

contract, and they keep talking about it, then they have no other cause of action. Now, we don't care which way they go but we don't want the— The Court: I think the court's understanding of the thing, which they have given the court, that the contracts heretofore entered into are merely a yardstick or measure to guide this court, if the court should determine that there is this relief—under the law, that this is merely a guide."

This case is thus definitely identified as an action for alimony as distinguished from an action ex contractu. The distinction is important in determining the next question.

It is urged by the plaintiff that her right to recover is governed by the laws of New Jersey. The question is one in conflict of laws and the factors which would govern our determination of the question if the action were based upon contract are rendered inapplicable by reason of the character of this action.

The question, thus presented, is whether in an action in the courts of this state by a nonresident plaintiff to recover alimony against a resident defendant (the parties having been previously divorced in another jurisdiction) the rights of the parties can be determined in accord with the law of this state, the law of the state of plaintiff's present residence and of the separation and divorce having been pleaded and invoked by the plaintiff.

To this question an affirmative answer must be given. The question is effectively and authoritatively disposed of in Restatement of the Law of Conflict of Laws, pars. 462, 463, which read:

"Par. 462. Alimony Under Law of Another State.

"No action for alimony can be maintained under the common law or the statutes of another state. * * *

"Par. 463. Grant of Alimony to Spouse Under Law of Forum.

"Alimony can in its discretion be granted by a court under the law of its own state in favor of a spouse against any spouse who is personally subject or whose property is subject to the jurisdiction of the court."

The duty to pay alimony is a phase of the duty to support which grows out of, and in some instances (as in the case at bar under the circumstances previously outlined) survives, the pre-existing marital status. The duty to support, as well as the standards by which the extent of that duty is determined, are imposed by law, and peculiarly identified with the public policy and legislative authority of each of the several states. Thus, one state is not bound to depart from standards of its own and adopt the standards of another when the rights and duties of one of its own citizens is to be determined. Our own law allows ample latitude for a complete determination of the rights of the parties before us.

But the plaintiff contends that under our law and the principles which in this jurisdiction control judicial discretion in determining the amount of alimony allowable, her rights have not been fully recognized.

As we pointed out in West v. West, supra, insofar as financial circumstances control the amount of allowances, those circumstances must be as of the time of the divorce, which as we have mentioned was in 1923. The trial court so held and in this connection found that, at that time, the defendant was worth approximately $37,579. A review of the evidence discloses that this finding was in accord with the weight thereof.

Subsequent to the divorce, the defendant paid to the plaintiff for the support of herself and the child during minority, $36,000, which when added to the sum paid prior to divorce and after separation and the value of the property deeded plaintiff, aggregated in excess of $58,000.

It is thus apparent that the payments made subsequent to the divorce were approximately equivalent to the total financial worth of the parties at that time.

While the accumulations of property made by the parties during coverture does not constitute a limitation on the amount of alimony allowable, it is an important element and demands consideration in connection with, but not to the exclusion of, the husband's earning capacity (Fisher v. Fisher, 116 Okla. 129, 243 P. 730; Fowler v. Fowler, 61 Okla. 280, 161 P. 227; Hughes v. Hughes, 177 Okla. 614, 61 P. 2d 556; and Mathews v. Mathews, supra) viewed, of course, as of the time of the divorce (West v. West, supra). In connection with this latter factor it is observed that the earning capacity of the defendant was quite substantial at the time of the divorce. When considered in conjunction with the accumulated property, it was sufficient to justify the conclusion that the defendant should pay the plaintiff a sum in excess of an amount representing a fair division of accumulated property, but such a sum has been paid, and under the standards governing such matters, we are not justified in concluding that the trial court abused its judicial discretion in determining that said amount satisfied defendant's legal obligation to his former wife and their daughter, who has now attained her majority.

As we pointed out in Dresser v. Dresser, 164 Okla. 94, 22 P. 2d 1012, there is no defined standard by which the amount to be paid as alimony can be determined according to precise mathematical calculations. The circumstances of the parties as they existed at the time of the divorce must be viewed in the light of general concepts, and the matter must be decided with due regard to the rights of both parties.

An examination of the record discloses that such an investigation was accorded in the trial tribunal. A number of matters entitled to various degrees of consideration but not of controlling importance were presented to the trial tribunal. Some of those matters were closely connected with the personal lives of the parties hereto. No useful purpose would be served by a detailed reiteration thereof in this opinion. We have examined them from the standpoint of their bearing upon the alimony question here presented and find them insufficient to demonstrate that the conclusion announced by the trial court is in any respect incorrect.

There is considerable discussion in the briefs as to whether the arrangement existing between the parties subsequent to July 1, 1923, which was initiated by the letters previously mentioned in this opinion, was sufficiently definite to create a contract binding upon the parties. The arrangement is said to be fatally defective as a contract because of uncertainty as to duration of payment and as to the portion thereof which should be identified with the support of the daughter during minority and should terminate when she became of age. As we have noted, the parties did not expressly agree on either of these matters.

We deem it unnecessary to consider this phase of the law of contracts, since the case was presented by the plaintiff in the trial tribunal on the theory that the agreement did not constitute a binding contract.

After a careful consideration of the entire record, we are of the opinion that the judgment of the trial court in disposing of the controversy concerning permanent alimony was correct, and so hold.

One other question is presented. It relates to the action of the trial court in denying attorneys' fees, suit money, and temporary maintenance pending the final determination of the cause. As we have noted, the power of the court to make such allowance exists in an action for alimony subsequent to divorce upon authority of Spradling v. Spradling, supra. The power to grant such allowance does not necessarily depend upon the correctness of the position taken by the wife (Whitebird et al. v. Luckey, 180 Okla. 1, 67 P. 2d 775), its purpose being to enable her to properly present her case. T. F. McKennon v. Annie McKennon, 10 Okla. 400, 63 P. 704.

The resources of the plaintiff herein were comparatively meager; those of the defendant more adequate. While her right to ultimate recovery in this litigation was properly denied, it cannot be said that she did not prosecute the same in good faith. The arrangement respecting payments in the nature of alimony between herself and her husband was loose and uncertain and did not rest on judicial foundation. This suit was not an unnatural consequence of such a course of dealing. In view of the circumstances of the parties, we are of the opinion that the trial court should have (in the exercise of its discretion) made a reasonable allowance for attorneys' fees and for the reasonable and necessary expenses of this litigation. This error in the proceedings below may be corrected without the necessity of disturbing the proceedings or the result thereof in other respects.

The trial court is therefore directed, upon a hearing for that purpose only, to ascertain the reasonable and necessary expenses incurred by the plaintiff in this litigation, including a reasonable attorneys' fee, and enter judgment for the payment thereof.

Subject to the foregoing modification, the decision of the trial court is affirmed.

WELCH, V. C. J., and RILEY, GIBSON, and DANNER, JJ., concur.