Josephine FARLEY, Plaintiff in Error,

v.

R. C. FARLEY, Defendant in Error.

No. 36196.

Supreme Court of Oklahoma.

Oct. 5, 1954.

Rehearing Denied Oct. 26, 1954.

F. C. Swindell, Tulsa, for plaintiff in error.

Marvin T. Johnson, Tulsa, for defendant in error.

CORN, Justice.

Plaintiff filed this action September 17, 1952, to secure a divorce from his wife upon the grounds of extreme cruelty. The petition alleged the usual jurisdictional matters, the facts of the marriage (January 1, 1928, Del Rio, Texas) and the birth of one son, who was nearly 19 years old when this action was filed. Plaintiff charged defendant with acts and conduct constituting extreme cruelty, without provocation on his part; by reason thereof and because of the temperamental differences between the parties the legitimate aims of matrimony had been destroyed; that the parties had lived apart for some months, during which time plaintiff had recognized his family responsibilities by contributing $350 monthly for living expenses and the education of their son.

Defendant's answer denied generally plaintiff's allegations other than the facts of the marriage. By cross-petition she alleged their joint efforts to build a happy and successful married life during the earlier years of their marriage, so that by 1952 plaintiff was drawing $1400 per month from the company where he was employed; during the summer of 1952 he became indifferent toward her and their son, absented himself from home without explanation, kept company with another woman, and eventually advised her that he no longer would live with her, and thereafter removed his belongings from the home and remained separate and apart from his family without cause; concealed his own whereabouts and refused to see their son; that during his illness plaintiff had used certain money which defendant had inherited to defray his medical expenses. Further, defendant was 46 years of age, uneducated and untrained for earning her own livelihood, and being in poor health was unable to earn her way or pay necessary and anticipated medical expenses; that she was without means to employ counsel or to pay the usual living expenses for herself and the son. Defendant asked that plaintiff be denied a divorce and that she be decreed separate maintenance for herself and child in accordance with their usual standard of living, child custody and attorney's fees.

Plaintiff denied all material allegations of the cross-petition, and plead that defendant's unduly jealous nature, constant nagging, abusive treatment and unfounded charges of unfaithfulness had made continuation of their marriage an impossibility.

No useful purpose could be served by detailing the evidence of these parties at the trial as reflected by this record, so that only a brief résumé of the testimony is set forth here. Following their marriage these parties resided in a number of cities prior to moving to Tulsa, Oklahoma, some two years before filing of this action. Over the years following their marriage plaintiff so conducted himself as to gain a position of financial responsibility with his employer and, at the time of this action, was receiving a gross salary in excess of $14,000 a year. According to his testimony the discord in the family relationship had existed for some ten to fifteen years. Pri-

marily this arose out of his desire to take their son out into the oil fields, where his own work required him to go; because of differences of opinion arising out of, and dissension as to how, they should spend their money, and because of the extremely jealous nature of his wife, which led to her unwarranted accusations of infidelity on his part, since his work was such as to require his frequent absence from home. Plaintiff did testify their life together was a continuous quarrel, that defendant cursed him in extremely violent fashion, and that upon two occasions defendant had offered to do him physical violence.

The evidence developed that, during their married life, these parties had accumulated no property other than an automobile, household furnishings and certain life insurance policies covering plaintiff's life. Plaintiff testified he had not been guilty of infidelity, that his work required his frequent absence from the home, and explained the circumstances under which he had been seen in company with other women by the fact that he met them only casually or, in one instance, that he was accompanied by a lady who lived in the building where he was seeking to rent an apartment.

Defendant testified concerning their early life together and her effort to aid plaintiff's advancement in his field; that the majority of the bills, concerning which there was much discussion, had accumulated prior to their separation. She denied having cursed or threatened plaintiff, but charged plaintiff with having openly declared that he no longer loved her, had no obligations toward her and her son, and wanted to leave. According to defendant's testimony she had apprehended him in company of another woman, and it was following this occurrence that he packed and left the family home; she herself had seen him at another apartment house on various occasions and admitted having hired a detective agency to follow plaintiff. There also was considerable testimony concerning her health, need for medical attention, and the extent of her economic requirements, based upon her inability to work and the need for maintaining her (and the son's) accustomed standard of living.

The son was a witness for his mother. In addition to detailing the economic needs engendered by reason of his being a university student, his testimony was corroborative of his mother's evidence. He testified that prior to moving to Tulsa, a happy family relationship existed, but thereafter plaintiff changed completely, stayed away from home and was short tempered and easily provoked. He denied defendant had threatened plaintiff with physical violence or that she had used profane language, but testified plaintiff had stated he no longer loved them and was tired of it all.

When the evidence was closed the trial court set the case over for decision. Thereafter defendant filed an amended answer and cross-petition charging plaintiff with extreme cruelty in that he had been guilty of abusive language and physical violence toward defendant, while declaring he no longer loved her and desired a divorce, as a result of which defendant asked a decree of divorce. Plaintiff then filed his own amended answer denying the matters set forth by defendant, and asked that a decree of divorce be granted upon his petition.

April 30, 1953, the trial court entered judgment granting defendant an absolute decree of divorce upon her amended cross-petition. As property settlement and alimony the court awarded defendant the family automobile and household goods, together with $24,000 cash, to be paid $250 per month (from May 1, 1953) the first year, $200 per month the second year, and the balance to be paid at $150 per month. The decree also awarded custody of the child to defendant, and required plaintiff to pay $100 per month child support during his minority; directed plaintiff to pay certain outstanding bills, including the son's school tuition, and charged plaintiff with all costs of the action and payment of $750 attorney's fees for defendant's counsel, to be paid at the rate of $100 per month.

The defendant appealed from the judgment rendered upon the sole proposition

that, in the light of the evidence, the trial court erred in awarding defendant too small an amount as alimony. The basis of the argument for reversal is that (1) the husband's earning capacity is a proper element to be considered in determining the amount of alimony; and (2) numerous prior decisions have allowed fixed percentages (such as ⅓ or ½) of the husband's property, and by considering these decisions as a measuring device defendant would be entitled to a larger alimony award.

The first point of defendant's argument has been announced so often in prior decisions as not to require citation of authority. As respects the second point of defendant's argument, essentially the same contention was advanced in Smyth v. Smyth, 198 Okl. 478, 179 P.2d 920. In denying the validity of this argument we said, 198 Okl. at page 479, 179 P.2d at page 922:

"* * * There is no rule in this jurisdiction providing for allowance as alimony of any fixed, fractional portion either of jointly acquired property, or of separate property, by precise mathematical calculation. Miller v. Miller, 186 Okl. 566, 99 P.2d 515, Id., 311 U.S. 645, 61 S.Ct. 9, 85 L.Ed. 411; Burtrum v. Burtrum, 184 Okl. 61, 84 P.2d 598."

It is elementary that the allowance of permanent alimony rests within the discretion of the trial court, exercised in the light of all the surrounding circumstances. These parties had accumulated no substantial estate over their 24 years of married life. True, the plaintiff had risen in his employment to the point where he drew a substantial salary. This, however, was his only source of income and, in considering the extent to which the alimony award should attach to his future earnings, the trial court undoubtedly considered plaintiff's age, the uncertainties of life and the fact that no salaried employee is guaranteed either a constant salary or a position for his lifetime, together with the evidence as to the defendant's capabilities, and the background of, and reason for, these parties seeking a divorce. In view of the matters reflected in this record, we are unable to say the trial court abused his discretion in fixing the amount of defendants' alimony award, particularly since an equitable division does not necessarily mean an equal division. Burtrum v. Burtrum, supra; 12 O.S.1951 § 1278; Walter v. Walter, 206 Okl. 209, 242 P.2d 442.

During pendency of this appeal defendant filed an application for allowance of expense money, and for allowance of an additional attorney fee for presentation of this appeal. Such motion was denied without prejudice. More recently defendant applied to this court for allowance of additional support money pending appeal. In view of the early disposition of the case consideration of such motion is unnecessary. As respects the application for the allowance of expense money, it appears plaintiff was required to pay into court the filing fee ($25) and costs of printing briefs ($100), and that plaintiff complied with such order.

At the close of the trial of this case defendant's counsel was permitted to introduce evidence as to the value of his services. This testimony was to the effect a reasonable fee would be in excess of the amount fixed by the trial court. Although counsel for both parties were assiduous in their efforts, the record does not reflect that the case was unduly complicated, or that it required an undue amount of effort. We are of the opinion the attorney's fee fixed by the trial court quite adequately compensated counsel, and the motion for allowance of an additional fee on appeal is denied.

Judgment affirmed.

JOHNSON, V. C. J., and WELCH, DAVISON, ARNOLD, WILLIAMS and BLACKBIRD, JJ., concur.