James Dorsey McELREATH, Plaintiff in Error,

v.

Evelyn Ann McELREATH, Defendant in Error.

No. 37612.

Supreme Court of Oklahoma.

Oct. 8, 1957.

Rehearing Denied Nov. 6, 1957.

Wesley Whittlesey, Sapulpa, for plaintiff in error.

Gable, Gotwals & Hays, Tulsa, for defendant in error.

WILLIAMS, Justice.

This action was brought by Evelyn Ann McElreath, hereinafter referred to as plaintiff, against James Dorsey McElreath, hereinafter referred to as defendant, for divorce, custody of children, child support and alimony. Judgment was rendered for plaintiff, and defendant has appealed. As his first proposition of error, defendant contends that the District Court of Tulsa County is without jurisdiction to enter any decree in this matter for the asserted reasons that plaintiff was not a resident of Tulsa County, defendant was not a resident of Tulsa County, and plaintiff is not mentally capable of prosecuting this action. This action was instituted by the filing of plaintiff's petition on May 26, 1956, apparently at 10:30 o'clock a. m. on said date. Thereafter defendant filed a special appearance and plea to the jurisdiction of the court alleging that neither plaintiff nor defendant were residing in Tulsa County on the date the action was filed and further alleging that the Superior Court of Creek County had jurisdiction of the cause, the parties, the property and the children, and that such court had exercised its jurisdiction prior to the filing of the instant action. A hearing was held on June 21, 1954, on the question of jurisdiction, at which time considerable evidence was introduced by both parties. As a result of such hearing, the trial court found that on May 26, 1954, and for more than one year prior thereto, the plaintiff was an actual resident of Tulsa County, Oklahoma; that on May 26, 1954, and for some time prior thereto, defendant was an actual resident of Tulsa County, Oklahoma; that the instant action was filed in the District Court of Tulsa County, at 10:36 o'clock a. m. on May 26, 1954; that on the same date an action for divorce was filed by the defendant herein in the Superior Court of Creek County, Oklahoma; that the evidence was inconclusive as to the exact time of the filing of the case in Creek County, Oklahoma, and that the court therefore was unable to determine which case was actually filed first in point of time on said date. The court concluded that the question of the time of the filing of the respective cases was moot in view of the finding that defendant was a bona fide resident of Tulsa County at the time he filed his action in Creek County, and that in view of the findings as to the residence of the parties, the plea to the jurisdiction of the court should be denied, and an order was entered accordingly.

Defendant asserts that the finding of the court below on the question of residence is not binding on this court. The rule is, of course, that an action for divorce is one of equitable cognizance, and the question of domicile in such action is one of fact, to be determined from the evidence in the case. The controlling fact to be considered is that of intention and to determine this fact the trial court, and this court on appeal, may take into consideration all the

movements, transactions, and attending circumstances of the party or parties involved in the question. When the trial court's finding on such question is attacked on appeal, this court will consider all the evidence and weigh it, to ascertain whether or not the finding is against the clear weight thereof, and, if such finding is clearly against its weight, then render or cause to be rendered such judgment as the trial court should have rendered, but, if such finding is not clearly against the weight of the evidence, then the same will be affirmed. Pope v. Pope, 116 Okl. 188, 243 P. 962.

■ Defendant's principal argument seems to be that plaintiff was not physically present in Tulsa County, or the State of Oklahoma, for several months prior to the filing of this action. The evidence reveals that in March, 1952, the parties, together with their two children, moved from Austin, Texas, to Tulsa, Oklahoma, where they purchased a home, and thereafter resided. In October of 1953, while residing at such Tulsa home, plaintiff became emotionally upset, and apparently feeling the need of assistance, attempted to contact her husband, the defendant, at his office, but was advised that he was out of the state. Plaintiff then took one of the two cars belonging to the parties, a key to the home, and her daughter, and drove to the home of her parents in Ft. Worth, Texas, apparently to visit with such parents and secure the aid or assistance which she felt she needed. Plaintiff took none of her personal possessions with her, and there is no evidence whatsoever that she had any intention of moving out of her home or abandoning the same, or of separating herself from her husband. After arriving at the home of her parents in Ft. Worth, plaintiff was placed in a hospital in Dallas, Texas, under the care of a physician, where she remained until December 31, 1953. While plaintiff was so hospitalized, defendant apparently came to Ft. Worth and got the automobile, the house key and the daughter of the parties, and returned them to the home of the parties in Tulsa, Oklahoma.

Plaintiff was released from the hospital as cured, on December 31, 1953. When defendant was advised that plaintiff would be released from the hospital at such time, he announced that he would be too busy to pick her up, and requested plaintiff's father to pick up the plaintiff at the hospital and take her to plaintiff's father's home. Plaintiff's father and mother did pick up the plaintiff upon her release from the hospital and took her to their home in Ft. Worth, where she remained until this action was instituted. Plaintiff testified that it was always her intention and desire to return to her home in Tulsa, and that she had merely stayed with her parents at their home in Ft. Worth, as a temporary matter and because the defendant had instructed her to, and had instructed her not to return to the home in Tulsa. In this connection it is noticed that one of the items of immediate relief sought by plaintiff in this action was to be allowed to return to her home in Tulsa, and to be restored to the possession thereof. It should also be noted that the greater part of plaintiff's clothing and personal belongings remained in the home in Tulsa at all times material here up until the day this action was instituted, and were at no time removed by the plaintiff or by any one upon her instructions. The household goods of the parties likewise remained in the home at Tulsa at all times material herein, as did the children of the parties and the housekeeper employed to care for them. Under such circumstances, the trial court's finding as to plaintiff's residence was not against the clear weight of the evidence, but was strictly in accordance therewith.

■ We do not deem it necessary to discuss defendant's apparently abortive attempt to move the household goods, the children and his residence from Tulsa to Bristow, Oklahoma, on the day this action was filed, except to note that the trial court found such attempt to be completely ineffectual and not in good faith and that such finding is not against the clear weight of the evidence.

■ The basis for defendant's assertion that the District Court of Tulsa County is without jurisdiction to enter any decree because plaintiff is not mentally capable of prosecuting the action is somewhat difficult to ascertain, but it is apparently defendant's theory that one who is or has been mentally ill is not entitled to seek the protection or aid of the District Court of Tulsa County. No authority is cited in support of such unique proposition, and it occurs to us that other things being equal, such a person would have no less need of the protection and assistance of the courts than would other persons. In any event, the only medical testimony presented to the trial court was to the effect that plaintiff was perfectly competent, and the trial court did not err in holding that it had jurisdiction.

As his second proposition of error defendant asserts that he did not receive a fair trial. In support of such proposition the following language is found in defendant's brief:

"Attention of the court is invited to the entire record in this cause for this purpose—time and time again protests were made as to the questions of counsel for the plaintiff, who persistently and repeatedly violated the rules of evidence and the rulings of the lower court in pursuing matters in an improper manner and in returning to said matters after adverse rulings of the court, who would eventually allow the questions in order to get on with the case. It was apparent, early in this case, that any attempts to limit counsel to proper examination would be futile.

"As a result, the defendant was deprived of a fair and impartial trial. His constitutional rights were violated and the entire case should be reversed."

Pursuant to defendant's invitation, we have carefully reviewed the entire record in this cause. We find nothing therein indicating that defendant was deprived of a fair and impartial trial, or that his constitutional rights were in any manner violated. Following the above quoted argument, ref-

erence is made in defendant's brief to two examples in the record, which it is alleged should suffice to support the above quoted allegations. Both examples referred to were rulings of the court on the admissibility of certain evidence, offered at a hearing on plaintiff's application for temporary support money, not at the trial on the merits. Neither ruling is even shown to be erroneous, much less prejudicial. We find no merit in defendant's assertion that he did not receive a fair trial.

■ As his third proposition of error, defendant asserts that the judgment violates the statutes of the State of Oklahoma and the decisions of this court. This proposition is directed at that portion of the judgment which set over to plaintiff, as alimony, an undivided one-third interest in defendant's separate property. Defendant asserts that such portion of the judgment violates the provisions of 12 O.S.1951 § 1278. The portion of such statutory provision dealing with the allowance of alimony reads as follows:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable."

Defendant does not point out just how the judgment complained of violates the above quoted statutory provision, and we are of the opinion that it does not. Defendant also cites Kupka v. Kupka, 190 Okl. 392, 124 P.2d 389, and Lawson v. Lawson, Okl., 295

P.2d 769, and asserts that the judgment violates the law of this state as laid down by these cases. Such cases are not in point. Neither case involved an award of alimony, and both cases were concerned solely with a determination of the propriety of a division of jointly acquired property, in view of the provisions of 12 O.S.1951 § 1278, directing the court to make division of such jointly acquired property between the parties "by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof." Defendant apparently conceived the idea that because the trial court awarded plaintiff an interest in defendant's separate property, the court had considered such property to be jointly acquired property and was attempting to make a division thereof accordingly. The record and judgment in this case, however, indicate clearly that such was not the case. The trial court merely awarded plaintiff alimony out of defendant's separate property, as specifically authorized by the statute above quoted, and we find nothing therein that violates either the statutes of this state or the decisions of this court.

■ As his last proposition of error, defendant asserts that the attorney's fee and expenses allowed were excessive. The trial court found that plaintiff was entitled to judgment for the sum of $1,100, payable to her attorneys, to reimburse them for expenses advanced in connection with the case, and that plaintiff was entitled to an allowance of the sum of $10,000 as attorney's fee, payable to her attorneys, and that the sum of $1,900 had theretofore been paid on said attorney's fee by defendant, leaving a balance of $8,100 payable to said attorneys, and judgment was rendered accordingly. Defendant takes the position that no allowance for the expenses should have been made at all, and that the amount allowed as attorney's fee for plaintiff's attorneys was too high. It was certainly proper for the trial court to ascertain the reasonable and necessary expenses incurred by the plaintiff in this litigation, and en-

ter judgment for the payment thereof. Miller v. Miller, 186 Okl. 566, 99 P.2d 515. Defendant complains that the expenses allowed were neither itemized nor explained. The record reveals that plaintiff's counsel took the stand and testified as to the amount of money he had paid out in connection with the case at bar, and as to the expenses he had incurred but not yet paid in connection therewith, and as to the general nature of such expenses. Although plaintiff's counsel was cross-examined by defendant's counsel on this subject, he was not asked to itemize or explain these expenses in any greater detail than he already had done. Under such circumstances we do not believe defendant can complain of the lack of an itemized statement. With reference to the attorneys' fee itself, plaintiff's counsel testified in detail as to the nature of the services rendered, the time consumed thereby, the unusual difficulties encountered and the various activities undertaken by him in plaintiff's behalf, such as taking of depositions, the resisting of the action brought by defendant in Creek County, trips to Ft. Worth, Texas, to negotiate for a settlement and to obtain information, and similar matters. Two local attorneys were called and testified as to the value of the services rendered by plaintiff's attorney in this case. One of them testified that a reasonable fee would be not less than $12,500 and not more than $15,000. The other testified that $12,500 would be a reasonable fee. Defendant offered no evidence in regard to the amount of the attorneys' fee.

■ In determining the amount of a reasonable attorney's fee that should be allowed a wife in a contested divorce action, the ability of the husband to pay and the means and property of the parties are factors to be considered, and where the allowance made by the trial court is reasonably supported by the evidence, it will not be disturbed on appeal. Brannon v. Brannon, 207 Okl. 529, 250 P.2d 447. Defendant's separate property was valued at from $100,000 to $300,000. In view of these estimates and the other proof in the case the trial court found the fees to be reasonable. Aft-

er reviewing the record in this case and considering the prolonged nature of this litigation, the questions involved and the difficulties encountered, the results obtained, the ability of the defendant to pay and the means and property of the parties, we are of the opinion that the attorneys' fee allowed by the trial court is not excessive, but is reasonably supported by the evidence.

Plaintiff has made application for additional attorneys' fee on appeal. The application for additional attorneys' fee on appeal is denied.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and CARLILE, JJ., concur.

BLACKBIRD, J., concurs in part and dissents in part.